**COUNTRY FLOORS, INC., Appellant,**

v.

**A PARTNERSHIP COMPOSED OF Charley GEPNER AND Gary FORD, d/b/a Country Tiles, Appellee.**

**No. 90–1439.**

United States Court of Appeals, Third Circuit.

Argued Nov. 14, 1990.

Decided April 16, 1991.

Arthur H. Seidel (argued), Nancy Rubner–Frandsen, Stephen J. Meyers, Seidel, Gonda, Lavorgna & Monaco, P.C., Philadelphia, Pa., for appellant.

John T. Synnestvedt (argued), Alexis Barron, Bryna S. Silver, Synnestvedt & Lechner, Philadelphia, Pa., for appellee.

Present STAPLETON, HUTCHINSON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

Appellant Country Floors, Inc. (Country Floors or the Corporation), a manufacturer and seller of upscale ceramic tile and accessories, appeals a final order of the United States District Court for the Eastern District of Pennsylvania. That order granted summary judgment to appellees, a Partnership composed of Charley Gepner (Gepner) and Gary Ford (Ford) (collectively the Partnership). The Partnership also sells ceramic tile and accessories under the name "Country Tiles" from several of its own stores. Country Floors, the older concern, instituted this action by a complaint asserting that the Partnership's use of the name "Country Tiles" and its advertising of that name infringed upon the Corporation's two federally registered trademarks, its service mark, and constituted unfair competition under the Lanham Act, 15 U.S.C.A. §§ 1051–1128 (West 1963, 1976, 1982 & Supp.1990), and at common law.

The Corporation claimed that the Partnership's use of its common law trademark and tradename "Country Tiles" was likely to result in confusion with the Corporation's name, its service mark and its federally registered trademarks "Country Floors" and "Country Tile." The Partnership denied that confusion existed, claimed prior use of the name "Country Tiles" and filed a counterclaim seeking to cancel the Corporation's registration of the "Country Tile" mark because it infringed upon the Partnership's use of "Country Tiles." Early in the case, the district court denied the Corporation's motion for a preliminary injunction, holding that the Corporation had not made a showing sufficient to present a likelihood of confusion between the "Country Floors" and "Country Tiles" names or marks and permitted the Partnership's "Country Tiles" store in Philadelphia to continue to operate.

Later, the Partnership filed a motion for summary judgment. The district court granted that motion, relying in part on credibility determinations it had made in connection with the Corporation's earlier motion for preliminary injunction. The court's final order granting the Partnership's motion for summary judgment included an injunction against the Corporation's further use of the trademark "Country Tile" and also canceled the Corporation's registration number for that mark. The Corporation appealed.

We hold that the district court erred when it used the findings and credibility determinations that it made in the preliminary injunction hearing to decide the Partnership's motion for summary judgment. Rejecting as immaterial the additional evidence produced by the Corporation after discovery,[1] the court made credibility determinations from the evidence already presented instead of determining whether any genuine issues of material fact were left to be resolved. The record on this appeal demonstrates that a number of key factual questions remain, not least among them the likelihood of confusion. Also remaining are fact issues relating to the Partnership's asserted prior use of its common law mark and name "Country Tiles." Additionally, even if the Partnership has some right of prior use with respect to the mark "Country Tiles," there are unresolved issues concerning the market in which the Partnership had prior use, as well as genuine issues of material fact concerning the Corporation's diligence in protecting its rights. Accordingly, we will reverse the district court's order granting summary judgment to the Partnership, vacate its order canceling the Corporation's federal registration number for "Country Tiles" as well as its injunction against the Corporation's continued use of that mark and remand for further proceedings consistent with this opinion.

II.

The Corporation owns and uses the tradename and service mark "Country Floors." It also holds an incontestable federal registration for the trademark "Country Floors." This trademark has been used since the 1960's and was registered on the Principal Register in the United States Patent and Trademark Office in 1976. A representation of the trademark is reproduced in the Appendix. In 1986, the Corporation also entered a mark on the Principal Register incorporating the name "Country Tile."

The Partnership uses the name "Country Tiles" in its retail stores and its advertising. In September 1988, the Partnership registered the name "Country Tiles" as a fictitious name with the Commonwealth of Pennsylvania's Department of State in Harrisburg. In January, 1989, the Partnership also obtained a Pennsylvania trademark registration number and a Pennsylvania Service Mark registration for its mark "Country Tiles." A representation of this trademark is also reproduced in the Appendix.

---

**1.** The district court stated that the additional evidence developed by the Corporation in discovery would not change the findings and conclusions it reached in denying the preliminary injunction.

The Corporation sought both legal and equitable relief, claiming that the Partnership's use of the common law trademark "Country Tiles" directly infringed upon the Corporation's federally registered trademarks "Country Floors" and "Country Tile." Its complaint included allegations of trademark infringement pursuant to 15 U.S.C.A. §§ 1051–1128 and common law, false designation of origin pursuant to 15 U.S.C.A. § 1125(a), and common law unfair competition and unjust enrichment. The Partnership raised several affirmative defenses including laches and counterclaimed seeking legal and equitable relief for various violations of the Pennsylvania Trademark Act, 54 Pa.Cons.Stat.Ann. §§ 1101–1126 (Purdon Supp.1990), including alleged injury to business reputation and trademark, service mark and tradename dilution, common law trademark and service mark infringement, and unfair competition.

At a preliminary injunction hearing, the Corporation presented evidence that the Partnership's use of the name "Country Tiles" led customers to confuse the Partnership's Manayunk store with the previously established "Country Floors" Philadelphia sales outlet and showroom. The district court denied the Corporation's motion for a preliminary injunction, in part because of its view that there was no likelihood of confusion between the "Country Floors" and the "Country Tiles" names and logos. Thereafter, the parties engaged in discovery and the Partnership filed a motion for summary judgment in January, 1990.

The district court granted the Partnership's motion for summary judgment and entered final judgment in favor of the Partnership on May 18, 1990. It also enjoined the Corporation from using the trademark "Country Tile" and canceled the Corporation's registration number for that mark pursuant to 15 U.S.C.A. § 1119. This timely appeal followed.

### III.

The Corporation, Country Floors, began in 1964 as a small retail business in the basement of its President and Chief Executive Officer, Norman Karlson (Karlson). Its first store was located on 26th Street in New York City. There it sold hand decorated and imported tiles from various European countries. The Corporation's gross sales for the first year totaled about $95,000.00. Today, its sales are about $14,000,000.00 per year.

Country Floors now maintains either showrooms or warehouses, directly or through licensees, in New York City, Miami, Philadelphia, Los Angeles and Melbourne and Sydney, Australia. The Florida showroom opened in 1972, the Philadelphia showroom in 1976 and the Los Angeles showroom in 1982. Although not the largest retail tile company in the United States, Country Floors is among the leaders in the high-end tile market. It not only imports tiles from different manufacturers around the world but designs new tiles as well. Its merchandise is sold both through its showrooms and through a system of sales representatives.

The name "Country Floors" has been used by the Corporation on its packages since it began business in 1964. On July 6, 1976, a logo incorporating the name was registered as a trademark in the United States Patent and Trademark Office, Registration No. 1,042,904. The logo depicts the tradename "Country Floors" in Augustea type font, centered on a representation of a ceramic tile.

Over the course of its operations, the Corporation has received mail and checks from customers addressed or payable to the names of "Country Tiles," "Country Tile" and "Country Tiles, Inc." In 1985, it began marketing a line of Italian tile under the name "Country Tile." On February 18, 1986, the Corporation filed for and received federal registration number 1,383,398 for a mark incorporating the name "Country Tile."

The "Country Tiles" stores the Partnership now operates are, in a sense, foster children of a single tile store that first opened in Westport, Connecticut (the Westport store) in 1972. The Westport store began as a joint venture between Country Floors and the Basque Corporation (Bas-

que). Fifty percent of the stock of this venture was owned by Country Floors. The other fifty percent belonged to Basque. Country Floors gave Basque a license to use the tradename "Country Floors." Tom and Kita Melahn (the Melahns) were the principals in Basque.

In 1979, a dispute arose between Basque and Country Floors. Country Floors sued Basque in a New York state court. A settlement was reached that terminated the relationship between Basque and Country Floors. Under the settlement the licensing agreement was canceled, Basque and the Melahns were restricted from further use of the name "Country Floors," and Country Floors and Karlson, its president, agreed not to engage in the sale of ceramic tile in Westport, Connecticut as long as Basque or the Melahns engaged in such business there.

Basque continued operations at the Westport store under the name "Country Tiles." The "Country Tiles" logo employed by the Westport store contains the same Augustea type font used in the "Country Floors" logo, and like that logo, centers its name on a ceramic tile. Tom Melahn was involved in the design of both logos. On September 13, 1979, Country Floors' attorney sent a letter to Basque asking it to remove the "Country Tiles" signs from the outside of the Westport store. Although the record is ambiguous as to whether the letter from Country Floors' attorney referred to continued use of the name "Country Tiles" or just the "Country Tiles" logo, the district court concluded that the Corporation only objected to use of the sign. The record clearly shows, however, that Country Floors continued to sell goods to Basque and Basque continued to operate under the name "Country Tiles."

The name "Country Tiles" first came to Gepner and Ford's attention in 1982 when the Melahns invited them to purchase the Westport store. They declined. The Melahns then sold the Westport store to Joel Berkowitz (Berkowitz). The terms of the Melahns' sale of the business to Berkowitz gave him whatever right the Melahns had to use the name "Country Tiles." The

Westport store, under Berkowitz's ownership, continued operations under that name.

In the spring of 1983, the Partnership and the Melahns met again. They talked about opening a tile store in the Delaware Valley area. The Melahns suggested the Partnership use the name "Country Tiles." Berkowitz was not opposed. Thereafter, in 1983, the Partnership opened a small retail tile store in Stockton, New Jersey, under the name "Country Tiles," and a Centreville, Delaware store the following year. A Westfield, New Jersey store opened in 1988. Just before this action began, the Partnership formally purchased the name "Country Tiles" from Berkowitz. On January 3, 1989, the Partnership obtained its Pennsylvania registration for the tradename "Country Tiles." In June 1989, the Partnership opened a store in the Manayunk section of Philadelphia.

### IV.

The district court had subject matter jurisdiction over the Corporation's Lanham Act claims, 15 U.S.C.A. §§ 1051–1128, pursuant to 28 U.S.C.A. § 1338(a) (West 1976). It had pendent jurisdiction over the related state statutory and common law claims pursuant to 28 U.S.C.A. § 1338(b) (West 1976). This Court has appellate jurisdiction over the district court's final orders granting the Partnership's motion for summary judgment and permanently enjoining the Corporation from using its incontestable trademark incorporating the name "Country Tiles," pursuant to 28 U.S.C.A. § 1291 (West Supp.1990).

Since this appeal is taken from a grant of summary judgment, our scope of review is plenary. *See International Union, UMWA v. Racho Trucking Co.*, 897 F.2d 1248, 1252 (3d Cir.1990). "We apply the test provided in Federal Rule of Civil Procedure 56(c): (1) is there no genuine issue of material fact and (2) is one party entitled to judgment as a matter of law?" *Id.* To overturn a summary judgment, the losing party in the district court needs to show that one or more of the facts on which the district court relied was genuinely in dis-

pute and material to the judgment. *See id.; Avia Group Int'l Inc. v. L.A. Gear,* 853 F.2d 1557, 1560–61 (Fed.Cir.1988). However, when opposing a motion for summary judgment, a party cannot rely on the averments or denials in the pleadings but must go beyond them "[to] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

## V.

In summary form, the question before us is whether the record shows the continuing existence of at least one genuine issue of material fact. If it does, the district court's order granting summary judgment in favor of the Partnership cannot stand. That question has both a procedural and a substantive aspect. The two are intertwined, but here we think separate discussion may add clarity to the analysis.

Procedurally, the general question is whether the district court acted in accord with Rule 56(c), and the specific question is whether it erred in relying on its prior evaluation of the credibility of the evidence in deciding the Partnership's subsequent Rule 56(c) motion. Substantively, we must identify the principles of the law of unfair competition that govern Country Floors' various claims, as well as the Partnership's counterclaims, and then apply them to the record to see whether there are any real disputes about the facts that are material to the governing principles of substantive law we have so identified.

## A.

■ We will consider the procedural component first. On this aspect, we hold the district court, when it granted the Partnership's summary judgment motion, inappropriately considered credibility findings that it made in denying Country Floors a preliminary injunction.

Under Federal Rule of Civil Procedure 56(c), summary judgment may be entered against a non-moving party who fails to make a showing sufficient to establish the existence of an element essential to the non-movant's case on which the non-movant will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

In *Celotex Corporation v. Catrett,* the Supreme Court clarified the burdens of the moving and non-moving parties on a motion for summary judgment. The movant has the initial burden of showing an absence of genuine issues of material fact, but does not have to supply affidavits or other materials negating the adversary's claim. *Id.* at 323, 106 S.Ct. at 2552. The non-moving party then must respond by going "beyond the pleadings and [through] affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Federal Rules of Civil Procedure 56(c) and 56(e)).

■ These principles and the nature of the record before a court on a Rule 56(c) motion logically imply that credibility evaluations are inappropriate in deciding a motion for summary judgment. It is error to rely on the previous resolution of credibility issues in deciding a motion for summary judgment because such reliance cannot coexist with the requirement of Rule 56(c) that no genuine issues of material fact remain outstanding.

When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party:

> [The] [i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

*Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976) (footnote omitted), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Although a

"scintilla of evidence" supporting the non-movant's case is not sufficient to defeat a motion for summary judgment, it is clear that a district court should not weigh the evidence and determine the truth of the matter itself, but instead should determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In sum, on a motion for summary judgment the responsibility of the district court is to determine if there are triable issues, rather than to try those issues and make findings based on the affidavits and other materials accompanying the motion.

■ Accordingly, inferences concerning credibility that were previously made in ruling on the Corporation's motion for a preliminary injunction cannot determine the Partnership's Rule 56(c) motion and should not be used to support propositions that underpin the decision to grant the motion for summary judgment. Credibility determinations that underlie findings of fact are appropriate to a bench verdict. They are inappropriate to the legal conclusions necessary to a ruling on summary judgment.

Reliance on the credibility of either testimonial or demonstrative evidence when deciding motions for summary judgment is also likely to create confusion about the proper scope of review. On appeal from an order granting summary judgment, appellate review is plenary, as defined *supra,* at 1060. After a bench trial, appellate review of findings of fact is for clear error. Fed.R.Civ.P. 52(a); *see Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986). Here, the parties themselves were confused and on occasion spoke incorrectly in their briefs in terms of clear error review of factual findings. *See* Brief for Appellant at 20; Brief for Appellee at 10. Reliance on credibility determinations in deciding Rule 56(c) motions may also improperly shift the ultimate burdens of production and persuasion, deprive the non-movant of the benefit of competing inferences or the opportunity to present additional evidence or engage in additional discovery.

Issues about the burdens of production and persuasion are issues of law. Their review is plenary. *See Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 142 (3d Cir.1987). A factfinder's resolution of competing inferences is reviewed for clear error. *See, e.g., Carter v. Rafferty*, 826 F.2d 1299, 1304 (3d Cir.1987) (noting that "all reasonable inferences must be drawn in favor of the non-movant" on summary judgment), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988). Review of questions concerning admission of evidence as well as those concerning the scope or opportunity for discovery is for abuse of discretion. *See In re Japanese Elec. Prods.*, 723 F.2d 238, 257 (3d Cir.1983), *rev'd on other grounds, Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding that rulings on admission of evidence are reviewable for abuse of discretion); *Marroquin–Manriquez v. INS*, 699 F.2d 129, 134 (3d Cir. 1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) (holding that the scope or conduct of discovery is within the sound discretion of the district court).

■ Additionally, in the context of this case, we note that the considerations that determine a motion for a preliminary injunction are foreign to those that govern decision on a motion for summary judgment. To prevail on a motion for a preliminary injunction, the moving party must, at the minimum, combine a reasonable probability of success on the merits with a showing of irreparable harm. *See Eli Lilly & Co. v. Premo Pharmaceutical Labs., Inc.*, 630 F.2d 120, 136 (3d Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). The movant may also be required to present evidence considering the effect a decision to grant or deny a preliminary injunction will have on third parties, as well as the public's interest in the outcome. *Id.* Finally, after balancing the relative harm to the parties, the court must exercise its sound discretion in ruling on the motion for preliminary injunction. *Id.*

Failure to strictly observe the principles governing summary judgment becomes

particularly significant in a trademark or tradename action, where summary judgments are the exception. *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 358 F.Supp. 1065, 1103 (D.Nev.1973), *vacated on other grounds*, 556 F.2d 406 (9th Cir. 1977). Under this Court's precedents, "[l]ikelihood of confusion is a fact [question] normally reviewable under the clearly erroneous standard," *Opticians Ass'n v. Independent Opticians*, 920 F.2d 187, 194–95 (3d Cir.1990) (citing *American Home Prods. Corp. v. Barr Laboratories, Inc.*, 834 F.2d 368, 370 (3d Cir.1987), even though "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source," *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984) (quoting *Warner Bros., Inc. v. America Broadcasting Co.*, 720 F.2d 231, 246 (2d Cir.1983)).

For all of these reasons, we conclude that the district court's assessment of the evidence before it on summary judgment, since it included evidence produced at the preliminary injunction hearing and the factual findings developed at the hearing, is in error. Its order granting the Partnership's motion for summary judgment contravenes Rule 56(c). This is no less true even when, as here, discovery is complete at the time the motion is decided and the district court states it has considered and rejected all the evidence developed in discovery as well as the evidence heard earlier on Country Floors' motion for a preliminary injunction.

### B.

■ Our holding that the district court erred in evaluating the credibility of the evidence on summary judgment in the light of the testimony it heard during the hearing on Country Floors' motion for a preliminary injunction does not end our inquiry. Since our review of the grant of summary judgment is plenary, the district court's order could still be affirmed, despite its procedural error, if the record nevertheless demonstrates the absence of any genuine issue of material fact. *See PAAC v. Rizzo*, 502 F.2d 306, 308 n. 1 (3d Cir.1974) (citing *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937)) (allowing affirmance on a legally correct theory different from the one relied on by the district court), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). Thus, we will examine the substantive law of unfair competition and apply it to the record. We must look to see whether any factual disputes remain that, if resolved in favor of Country Floors, would enable it to prevail on its claims.

Country Floors originally claimed trademark and tradename infringement in violation of §§ 32 and 43(a) of the Lanham Act, codified, respectively, at 15 U.S.C.A. § 1114 and 15 U.S.C.A. § 1125(a), along with common law trademark infractions. The affidavits and other materials the Corporation presented in opposition to the Partnership's motion for summary judgment convince us that summary judgment should not have been granted under the governing substantive law.

### 1.

■ On the Corporation's claims of trademark infringement, the existence of a factual issue on the likelihood of confusion is shown at the outset by a comparison of the "Country Floors" and "Country Tiles" logos. Their similarity alone is enough to raise a genuine factual dispute on Country Floors' § 32 Lanham Act trademark infringement claim. *See* Appendix (illustrating the "Country Floors" and "Country Tiles" logos). The two logos use the same type font and are both set on a ceramic tile. In addition, each logo utilizes only the center of the tile to display the name adding somewhat similar designs to form a border around the center of the tile.

A person is liable to the owner of a mark under § 32 of the Lanham Act if he uses a confusingly similar mark. The marks need not be identical, only confusingly similar. The Supreme Court discussed the test for confusion in *McLean v. Fleming*, 96 U.S. 245, 251, 24 L.Ed. 828 (1878):

What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trademark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled.

Visual comparison, in this instance, indicates the likelihood of confusion with respect to the parties' competing marks and presents a factual issue.

### 2.

The record also contains evidence from which a factfinder could conclude there was actual confusion between the Corporation's and the Partnership's names as well as their marks. Although only likelihood of confusion, and not actual confusion, is required by the Lanham Act, actual confusion usually implies a likelihood of confusion. *See Louisiana World Exposition, Inc. v. Logue,* 746 F.2d 1033, 1041 (5th Cir.1984); *see also McGraw Edison Co. v. Walt Disney Prods.,* 787 F.2d 1163, 1172 (7th Cir.1986) (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir.1971) (holding that "very little proof of actual confusion would be necessary to prove likelihood of confusion").

The evidence of actual confusion the Corporation produced in opposition to the Partnership's summary judgment motion indicated: (a) that Directory assistance gave a caller the number for the "Country Tiles" Manayunk Store rather than the 'Country Floors' Philadelphia showroom; (b) that the Westfield store received a past-due notice intended for the "Country Floors" Florida store from a supplier whose invoice arrived in an envelope which included other materials intended for "Country Tiles;" (c) that Suanne Ignacz, Manager of the "Country Tiles" Manayunk store testified that the number of inquiries about a connection between Country Floors and Country Tiles at the Manayunk store had increased from very few to a noticeable amount; and (d) that interior designer Sharon Frome, who is not affiliated with Country Floors, had confused the two stores. These examples of actual confusion preclude summary judgment in favor of the Partnership not only on Country Floor's trademark and service mark claims, but also on its tradename claims.[2]

### VI.

As we have explained, the Corporation's evidence of likelihood of confusion is by itself enough to compel reversal of the district court's order granting the Partnership's motion for summary judgment. However, the case also contains other fac-

---

**2.** The Trademark Act of 1946 (Lanham Act), 60 Stat. 427, as amended, 15 U.S.C. § 1051 *et seq.,* generally applies the same principles concerning registration and protection to both trade and service marks. See § 3, 15 U.S.C. § 1053. The Lanham Act defines a trademark to include "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." § 45, 15 U.S.C. § 1127. A service mark is "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." *Ibid. Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 192 n. 1, 105 S.Ct. 658, 660 n. 1, 83 L.Ed.2d 582 (1985). Our determination concerning Country Floors' trademark is equally applicable to its service mark, and the two are not distinguished in this opinion.
"Tradename" is a term of art in patent and trademark law and is distinct from "trademark."

Although only the Corporation's trademark can be protected against infringement by reference to § 32 of the Lanham Act, codified at 15 U.S.C.A. § 1114, § 43(a), codified at 15 U.S.C.A. § 1125(a), provides similar protection for its tradename:

> Trade names are symbols used to distinguish companies, partnerships and businesses. Trade names symbolize the reputation of a business as a whole. In contrast, trademarks and service marks are designed to identify and distinguish a company's goods and services. The major legal distinction between trademarks and trade names is that the trade names cannot be registered and are therefore not protected under 15 U.S.C. § 1114. However, analogous actions for trade name infringement can be brought under section 43(a).

*Accuride Int'l, Inc. v. Accuride Corp.,* 871 F.2d 1531, 1534 (9th Cir.1989) (footnotes and citations omitted).

tual issues concerning relevant markets, the effect of prior use on registered marks and the availability of the affirmative defenses of laches against the Corporation's claims. These are all likely to involve law peculiar to trademark, tradename and unfair competition cases. We will therefore comment on them for the guidance of the district court as it proceeds with this case.

### A.

The first of our additional comments applies to the Corporation's claims that the Partnership's mark "Country Tiles" infringes on the Corporation's mark "Country Floors."

 When comparing two marks each must be viewed in its entirety, although "one feature of a mark may be more significant than other features, and it is proper to give greater force and effect to that dominant feature." *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed.Cir.1983). When the dominant portions of the two marks are the same, confusion is likely. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir.1988) (finding Century Investments & Realty confusingly similar to Century 21 because of the dominance of the word "Century"). The Corporation contends that the dominant portion of its mark is "Country," and supports this by pointing out that when it applied to register the marks "Country Floors" and "Country Tiles," it was required to disclaim the descriptive words "floors" and "tile," pursuant to 15 U.S.C.A. § 1056. The descriptive portions of a mark can be disclaimed, although the entire composite mark, including the descriptive terms, is considered for purposes of infringement. *See Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 979–80 (C.C.P.A.1965). It follows logically that disclaimed matter such as "floor" and "tile" is not usually regarded as the dominant part of a mark. Since "floors" and

"tiles" were disclaimed, the use of the word "Country" by the Partnership is a material, although not necessarily a controlling, consideration on the Corporation's claim that "Country Tiles" logo directly infringed on the Corporation's federal trademark.

### B.

Our following comments apply generally to the likelihood of confusion between both the names and the marks the parties are using.

Country Floors has been in Philadelphia for over 14 years, and the Partnership has only had stores in the Delaware Valley region since 1983. Its newest establishment opened near Philadelphia in June of 1989. Therefore, the Corporation says the Partnership moved into the territory of an established concern and that the "likelihood of confusion standard" should be lowered to a "possibility of confusion," the standard applied when a newcomer enters an area already occupied by an established business. *See Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903, 908–09 (3d Cir.1952); *Dominion Bankshares Corp. v. Devon Holding Co.*, 690 F.Supp. 338, 345 (E.D.Pa. 1988); *Blumenfeld Dev. Corp. v. Carnival Cruise Lines, Inc.*, 669 F.Supp. 1297, 1319 (E.D.Pa.1987). We agree. This legal conclusion requires the district court to determine what market is relevant to the Corporation's claim that use of the name "Country Tiles" violates § 43(a) of the Act. Thus, if the possibility exists that the names "Country Floors" and "Country Tiles" will be confused, determination of the relevant market becomes especially important on the Corporation's claim that the Partnership has appropriated the Corporation's tradename in violation of § 43(a) of the Lanham Act by adopting a confusingly similar tradename.[3]

---

**3.** Under § 33 of the Lanham Act, the Corporation's registration of the logo incorporating the name "Country Floors" gives it an exclusive right to the use of the mark in the entire United States, and a right to be secure against the case

of confusingly similar marks anywhere in this country unless the Partnership can establish use in a particular market prior to registration by the Corporation. *See* 15 U.S.C.A. § 1115(b)(5).

## C.

We will also comment specifically on one other aspect of the district court's evaluation of the relevant customer market. The district court concluded that although the Corporation and the Partnership compete in the same market, they both deal with sophisticated customers who are unlikely to confuse the two names. Both Country Floors' and Country Tiles' customers are "predominantly professionals ... [who are] likely to exercise due care in knowing the location and name of the store with which they deal." Appellant's Appendix at 76. This question of customer-type, retail versus professional, also presents a genuine question of material fact. The record shows there was a sign "to the trade" in Country Floors' Philadelphia store, but the record gives indications that the Corporation also sells at retail. Similarly, though the original Westport store was located in a shopping center, indicating a retail customer market, the record does not clearly show that the Partnership's stores sell mainly to retail customers. Furthermore, even if most of the customers are professionals, the trademark law protects the entire gamut of purchasers, including retail consumers and members of the trade. See *Kroger Grocery & Baking Co. v. Blue Earth Canning Co.*, 88 F.2d 725, 726 (C.C.P.A.1937). The district court's determination of this question of customer type in favor of the Partnership was a major underpinning of its decision that confusion was not likely. The district court should not have resolved this point, because it presents a genuine issue of material fact. The Corporation presented enough evidence on this point to preclude granting the Partnership's summary judgment motion on the grounds that the customers were all professionals and therefore less likely to be confused.

## D.

Finally, the district court opinion considered certain affirmative defenses raised by the Partnership. Most importantly, it pointed out that Country Floors may be estopped from alleging infringement because of laches. However, because the correct disposition of the equitable defense of laches can only be made "by a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public," 2 J. McCarthy *Trademarks and Unfair Competition* 573 (2d ed. 1984), it usually requires the kind of record only created by full trial on the merits.

The factual issues peculiar to this case affecting the laches defense are the terms of the settlement between Basque and the Corporation, the continuing use of the name "Country Tiles" by the Westport store after the joint venture between Basque and the Corporation ended, the nature of the Westport store's continuing use of the name as adverse or actually or constructively permissive, the Corporation's knowledge of that use and the extent of the market affected by any delay in acting to prevent its use.

In this case the defense of laches is likely to be significantly affected by trademark and unfair competition concepts about level of threat, degree of harm and the relative increase of damage. These factors may need to be addressed in a factual context as the case proceeds. Cf. *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986) (noting that trademark owners must be "afforded some latitude to assess both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursuing litigation on the issue"). The application of these concepts is fact-based. On this record, the existence of laches could not be determined on summary judgment.

## VII.

As a final matter, we turn to cancellation of the "Country Tiles" trademark registration. Cancellation of the registration depended on resolution of disputed factual issues concerning prior use, scope of that use, and the possibilities of concurrent registration. The record indicates unresolved disputes over whether or not the

Corporation adequately objected to Basque's use of the name and logo "Country Tiles," and therefore whether the Corporation adequately protected its trademark against dilution. No determination tied to infringement of the "Country Tiles" mark should have been made in favor of the Partnership on summary judgment. The Corporation's registration of the mark "Country Tiles" could not be canceled absent resolution of the prior use and dilution issues. It was thus inappropriate for the district court to cancel the Country Tiles registration number.

Even if the district court believed that some restraint on the Corporation's use of its registered mark "Country Tile" was necessary, it should not have canceled the registration and enjoined the Corporation from using the "Country Tile" mark nationwide. The Partnership's name "Country Tiles," of course, could not be federally registered, and furthermore its mark incorporating that name was not federally registered. This Court has previously held that an unregistered mark is entitled to protection only in those areas where its owner was a senior user and had penetrated the marketplace. *See Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1394 (3d Cir.), *cert. denied,* 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985); *Blumenfeld Dev. Corp.,* 669 F.Supp. at 1318–19. The Partnership's Country Tiles stores are located in markets on the Eastern seaboard. Cancellation of the Corporation's "Country Tile" mark outside of the geographic area of the markets that the Partnership had penetrated prior to the Corporation's use of "Country Tile" was inappropriate. Therefore, we will vacate the district court's orders canceling the federal registration of the Corporation's "Country Tile" trademark and enjoining the Corporation's use of that mark pending full investigation of the appropriateness of such cancellation at trial.

## VIII.

For these reasons, we will reverse the order of the district court granting the Partnership's motion for summary judgment, vacate its orders canceling the Corporation's registration of its "Country Tile" mark and enjoining the Corporation from use of that mark and remand the case to the district court for further proceedings consistent with this opinion.

The Finest

Selection

In The East:

- Hand-Painted Tiles & European Terra Cottas
- French Copper, Brass, Vitreous Sinks & Faucets
- Ball & Ball Chandeliers & Brasses
- Giftware

Closed Sunday & Monday

**COUNTRY TILES**

The Old Depot - Box 326
Stockton, NJ 08559

609-397-0330

3806 Kennett Pike
Centerville, DE 19807

302-652-4666