**EWE GROUP, INC., doing business as Sweet Hut Bakery & Cafe, Plaintiff,**

v.

**The BREAD STORE, LLC, doing business as Sweet Talk Bakery & Cafe, Defendant.**

Civil Action No. 1:14–cv–2377–TCB.

United States District Court, N.D. Georgia, Atlanta Division.

Signed Sept. 22, 2014.

Kirk W. Watkins, Marcy Lane Sperry, Preston Hamilton Heard, Womble Carlyle Sandridge & Rice, LLP, Atlanta, GA, for Plaintiff.

Julie Anne Hoehn Burke, Steven G. Hill, John L. North, Hill Kertscher & Wharton, LLP, Atlanta, GA, for Defendant.

### *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

This is an action for trademark and trade dress infringement and unfair competition under federal and Georgia law. The parties appeared before the Court on September 18, 2014 for a hearing on Plain-

tiff's motion for preliminary injunction [9].[1] Based on the evidence and argument presented in the parties' briefs and by counsel at the hearing, the Court will grant the motion.

## I. Factual Background

### A. Parties

The parties in this case operate bakeries specializing in Taiwanese baked goods and bubble teas, among other dishes and drinks. Plaintiff Ewe Group, Inc. does business as Sweet Hut Bakery & Cafe ("Sweet Hut"). Defendant The Bread Store, LLC does business as Sweet Talk Bakery & Cafe ("Sweet Talk").

In April 2012, Sweet Hut's first location opened in Doraville, Georgia. Additional locations are expected to open in Atlanta in October 2014, Duluth in early 2015, and Norcross in early 2016. Sweet Talk's only location opened in Duluth in July 2014. It is eleven miles away from Sweet Hut's current Doraville location, but across the street from Sweet Hut's planned Duluth location.

### B. The Marks at Issue

Sweet Hut is the owner of the registered trademark SWEET HUT®, Registration No. 4382937. This registration was issued on August 13, 2013, based on an initial use date of April 8, 2012. It was issued under international class 30, for bakery products, namely, sweet bakery goods. During the registration process, the Trademark Office required that Sweet Hut disclaim any exclusive right to use the word "sweet" apart from the mark as shown, because it considered "sweet" to be descriptive of the goods and services in class 30. Sweet Hut also asserts common-law rights in the mark SWEET HUT® as well as in the marks SWEET HUT BAKERY & CAFE and SWEET HUT BAKERY & CAFE & Design (collectively, the "Marks"). It has used these Marks since April 8, 2012 in connection with its cafe, restaurant, bakery services, and baked goods.

Defendant Sweet Talk advertises, markets, offers and sells cafe, restaurant and bakery goods and services using the marks SWEET TALK BAKERY & CAFE and SWEET TALK BAKERY & CAFE & Design, which Sweet Hut alleges infringe Sweet Hut's Marks. Although its store did not open until July 2014, Sweet Talk began using these marks in advertising in February 2014, and in June it filed two trademark applications in connection with these marks (Serial Nos. 86177109 & 86177123). Sweet Hut is opposing the applications, and no decision has been made by the Trademark Office.

### C. The Trade Dress Claims

Although Sweet Hut has also brought claims against Sweet Talk alleging trade dress infringement, its motion is premised only on its mark claims. Nevertheless, the trade dress claims provide context for the parties' arguments relating to confusion and are relevant to the question of Sweet Talk's intent, so the Court will briefly address them here.

Sweet Hut claims a protected trade dress in its restaurant's layout, floor plan, decor, and related attributes. The specific design elements it points to as forming a part of its protected trade dress include, without limitation: (1) faux dark wood ceramic floor tiles; (2) white, wavy tiled walls; (3) pink booths separated by a hanging divider; (4) pendant lighting over the booths; (5) a ceiling with an arc design; and (6) LCD screens above the coun-

---

**1.** On August 6, 2014, the Court converted Plaintiff's motion for a temporary restraining order into a motion for preliminary injunction.

ter displaying its menu. It contends these features are inherently distinctive and non-functional and that they serve a source-identifying function.

There is no dispute that Sweet Talk incorporates at least some features that are similar to these. Sweet Hut asserts that Sweet Talk merely copied its design and made nominal changes. Sweet Talk responds that many of these features are common to most or all Asian bakeries and that their use of similar design features does not show any intent of copying Sweet Hut's trade dress. It is also undisputed that the restaurants' menus are similar but not identical.

### D. History Between the Parties

The first interaction between the parties occurred more than a year prior to the opening of Sweet Talk's restaurant. In May 2013, Dino Chow, who is now one owner of Sweet Talk, applied for an employee position at Sweet Hut. After training for two days, Mr. Chow informed Sweet Hut that he was no longer interested in the position and resigned. During those two days, Sweet Hut contends, Mr. Chow had unfettered access to Sweet Hut's menu, recipes, design, packaging, and other elements related to its operation. Sweet Talk contends Mr. Chow learned only how to make drinks during that two-day training period and that he did not have access to any information that is not available to Sweet Hut's customers. Mr. Chow submitted an affidavit testifying that he resigned to accept a full-time position at another restaurant. It is undisputed that Mr. Chow was not asked to and did not sign any sort of confidentiality, non-compete, or other agreement with Sweet Hut.

In March 2014, Sweet Hut learned through an equipment supplier that Sweet Talk had ordered similar or identical baking equipment from the same Taiwanese supplier. Sweet Talk contends that this distributor is one of the few well established Taiwanese distributors of baking supplies and that it was recommended by a personal friend of Sweet Talk's owners who is familiar with the restaurant-equipment industry.

The next month, in April 2014, Sweet Talk's contractor visited Sweet Hut's Doraville location. Sweet Hut contends the contractor measured cabinets and other design elements that were then copied at Sweet Talk's restaurant. Sweet Talk claims this visit was not at its direction and that in any event, its contractor built custom cabinets and did not copy any of Sweet Hut's design elements.

Finally, in June 2014 Mr. Chow visited Sweet Hut's new Atlanta location, which was not yet open to the public, and asked the contractor working there numerous questions about the restaurant's design. Sweet Talk responds that Mr. Chow was merely in the area and stopped in to ask when the store would be opening.

### E. The Evidence of Actual Confusion

Sweet Hut contends it has suffered loss of its goodwill and reputation as a result of the consuming public's confusion of Sweet Hut with Sweet Talk. To support is claims of actual confusion, Sweet Hut submitted declarations from its owners and employees testifying to examples of confusion including, without limitation, phone calls to Sweet Hut asking for the telephone number of Sweet Talk; inquiries from customers, vendors, and employees' friends about whether Sweet Hut and Sweet Talk are affiliated; a customer coming to Sweet Hut to pick up a cake that had been ordered from Sweet Talk; a customer presenting a Sweet Talk loyalty card at Sweet Hut asking for it to be stamped; and questions from Sweet Hut's accountants

about why Sweet Hut was using "Sweet Talk" for its new Duluth location. Sweet Talk, conversely, has submitted declarations in which its owners testify they are unaware of any actual confusion by customers.

### F. Sweet Talk's Harm if an Injunction is Granted

Sweet Talk argues that granting an injunction in favor of Sweet Hut will force it to shut down its operations (losing approximately $85,200 in revenues each month), lay off its employees, and incur approximately $60,000 in expenses to change its name.

### G. Posture

Sweet Hut filed its complaint in July 2014, asserting claims for trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a); trade dress infringement in violation of 15 U.S.C. § 1125(a); violations of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10–1–370 *et seq.;* unfair competition (through use of similar trademarks) in violation of O.C.G.A. § 23–2–55; common-law trademark and trade dress infringement and unfair competition; and common-law unjust enrichment. Sweet Talk filed its answer on August 1, denying all liability to Plaintiff and asserting a counterclaim for sham or bad-faith litigation. Sweet Hut's motion was filed on August 5.

## II. Analysis

■ A district court may grant a preliminary injunction or TRO only if the movant shows (1) a substantial likelihood that it will ultimately prevail on the merits of the case; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the oppos-

ing party; and (4) that if issued, the injunction would not be adverse to the public interest. *Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1307 (11th Cir.2010); *see also Morgan Stanley DW, Inc. v. Frisby,* 163 F.Supp.2d 1371, 1374 (N.D.Ga.2001) (same legal standard governs motions for preliminary injunction and motions for TRO).

A preliminary injunction "is a drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements." *Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1300 (11th Cir.2001) (internal punctuation omitted). But the Eleventh Circuit has noted that "trademark actions 'are common venues for the issuance of preliminary injunctions.'" *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *Foxworthy v. Custom Tees, Inc.,* 879 F.Supp. 1200, 1219 (N.D.Ga. 1995)).

Each of the relevant factors will be discussed below.

### A. Substantial Likelihood of Success on the Merits

■ To establish a *prima facie* case of trademark infringement and obtain injunctive relief, a plaintiff must demonstrate:

(1) that it has trademark rights in the mark or name at issue ... and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiffs mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods [or services] created by the defendant's use of the [mark or name].

*Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1512 (11th Cir.1984). The first element— Sweet Hut's rights in the marks at issue— is undisputed. Thus, the only question

before the Court for purposes of analyzing Sweet Hut's likelihood of success on the merits is whether Sweet Talk's marks and name creates a likelihood of confusion for consumers. In making this determination, courts look to the following non-exclusive list of factors:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion.

*Id.* at 1514.

### 1. Strength of Plaintiff's Marks

The first factor a court should look to is the strength, or distinctiveness, of the plaintiff's mark. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir.1982). There are four recognized categories of marks:

> Generic marks are the weakest and not entitled to protection—they refer to a class of which an individual service is a member (e.g., "liquor store" used in connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (e.g., "vision center" denoting a place where glasses are sold). Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, "penguin" would be suggestive of refrigerators. An arbitrary mark is a word or phrase that bears no relation-

ship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services). Arbitrary marks are the strongest of the four categories.

*Frehling Enters., Inc. v. Intl. Select Grp., Inc.*, 192 F.3d 1330, 1335–36 (11th Cir. 1999) (internal citations and punctuation omitted). "Also important in gauging the strength of a mark is the degree to which third parties make use of the mark." *Frehling Enters.*, 192 F.3d at 1336. "Where there is a lack of third-party use, the mark's strength is enhanced, as it is more distinctive, and therefore more easily recognized by consumers." *Id.* (further noting that "case law is clear that such lack of third-party use should be considered in assessing the strength of a mark").

A threshold matter the Court must consider is the significance of Sweet Hut's disclaimer of the word "sweet" in connection with its registration of the "SWEET HUT®" mark. Sweet Talk argues that because Sweet Hut obtained its registration only by disclaiming the word "sweet," the focus of the Court's analysis should be the non-disclaimed and non-generic portions of the mark, specifically, on the difference in sound, meaning, and spelling of the words "talk" and "hut." The Court disagrees.

The strength and validity of a mark is "determined by viewing the trademark as a whole," including any generic, descriptive, or disclaimed portions. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362–63 (11th Cir.1997); *accord Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1065 (3d Cir.1991) ("The descriptive portions of a mark can be disclaimed, although the entire composite mark, including the descriptive terms, is considered for purposes of infringement."); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed.Cir.1983)

("[I]t is well settled that the disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion.").

■ Sweet Talk correctly points out that at least eight other bakeries in Atlanta use the word "sweet" in their names, arguing that this dilutes the strength of Sweet Hut's Marks. But none of those bakeries is an Asian bakery, and none serves bubble tea. Additionally, a mere eight instances of third-party use is insufficient to find that a mark has been diluted. *Cf. Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n,* 651 F.2d 311, 316 (5th Cir. July 20 1981) (4,400 third-party uses of "Sun," with "a significant number" of those being financial institutions); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259 (5th Cir.1980) (seventy-two third-party registrations of the mark "Domino" with the U.S. Patent and Trademark Office and fifteen third-party uses); *Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 505 (5th Cir.1979) (eighty-five uses of the claimed mark by companies operating within the relevant industry). In sum, the Court agrees with Sweet Hut that its Marks, when viewed as a whole, are entitled to enhanced protective as suggestive marks.[2]

### 2. Similarity Between the Parties' Marks

In analyzing the second factor, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters.,* 192 F.3d at 1337. "[T]he closer the marks are, the more likely reasonable consumers will mistake the source of the product that each mark represents." *Id.*

■ In arguing that the marks are dissimilar, Sweet Talk again asks the Court to disregard the disclaimed word "sweet" and the descriptive words "bakery" and "cafe," and instead compare only the words "hut" and "talk." It points to cases in which, for example, the marks "Ross" and "Boss," and "Dan Tana's" and "Dantanna's," were held sufficiently dissimilar. *Ross Bicycles, Inc. v. Cycles USA, Inc.,* 765 F.2d 1502, 1507 (11th Cir.1985); *Tana v. Dantanna's,* 611 F.3d 767, 777 (11th Cir.2010). In those cases, however, the marks were found to be dissimilar because their overall appearance, display, and meaning, as well as the different relevant markets in which they operated, minimized the risk of confusion among consumers. In the case at hand, the Court finds the parties' respective marks to be very similar—albeit not identical—in overall appearance and impressions. This factor therefore weighs in favor of finding a likelihood of confusion.

### 3. Similarity Between the Parties' Products and Services

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling Enters.,* 192 F.3d at 1338. The parties' menus are not identical, but they are very similar. The Court finds this factor weighs in favor of likelihood of confusion.

### 4. Similarity of the Parties' Sales Methods

"This factor takes into consideration where, how, and to whom the parties'

---

2. Sweet Hut has not conceded that its Marks are not arbitrary, but for purposes of the instant motion, it has argued only that they

are entitled to the protections afforded suggestive marks.

products are sold. Direct competition between the parties is not required for this factor to weigh in favor of a likelihood of confusion, though evidence that the products are sold in the same stores is certainly strong." *Frehling Enters.*, 192 F.3d at 1339. Rather, to support a likelihood of confusion, there should be "some overlap" between the parties' respective retail outlets and customer bases. *Id.* It is undisputed that the parties use the same types of sale methods, which are methods common to many bakeries and restaurants. Thus, this factor also weighs in favor of likelihood of confusion.

### 5. Similarity of the Parties' Advertising Methods and Media

In comparing the similarity of the parties' advertising methods and media, "[i]dentity of periodicals is not required; the standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." *Frehling Enters.*, 192 F.3d at 1340. It is undisputed that the parties use the same types of advertising methods (including social media and word-of-mouth advertising). Therefore, this factor also weighs in favor of likelihood of confusion.

### 6. Defendant Sweet Talk's Intent

■ "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enters.*, 192 F.3d at 1340. Improper intent can be manifested through either "conscious intent to capitalize on [the plaintiff's] business reputation" or "intentional blindness" by the defendant in adopting the allegedly infringing marks. *Id.*

Although the evidence of Sweet Talk's bad faith intent to benefit from Sweet Hut's business reputation is not as "overwhelming" as Sweet Hut argues, there is sufficient evidence to support a finding that Sweet Talk was, at a minimum, intentionally blind to the likelihood of confusion between its marks and Sweet Hut's. Most significant to the Court's analysis in this regard are Mr. Chow's experience applying and training for, and then abruptly resigning from, a position as a Sweet Hut employee and his visit to Sweet Hut's newest location before it was yet open to the public. These facts, together with the other evidence presented by the parties, lend themselves to the conclusion that Sweet Talk knew of or was deliberately indifferent to the likelihood of confusion resulting from its use of the mark "Sweet Talk Bakery & Cafe."

### 7. Proof of Actual Confusion

"It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion. However, such evidence is not a prerequisite, and thus it is up to the individual courts to assess this factor in light of the particular facts of each case." *Frehling Enters.*, 192 F.3d at 1340 (internal citation omitted). Confusion of someone who is very familiar with the industry and enterprise at issue is relevant evidence of actual confusion. *Id.* at 1341 (citing *Safeway Stores*, 675 F.2d at 1167).

As a preliminary issue, Sweet Talk contends that the declarations from Sweet Hut's employees are insufficient to support a finding of actual confusion. This argument is misplaced, as both the Eleventh Circuit and other courts have previously admitted and relied upon this type of evidence in analyzing actual confusion. For example, in *University of Georgia Athletic Association v. Laite*, 756 F.2d 1535, 1546 (11th Cir.1985), the Eleventh Circuit found

"persuasive evidence" of actual confusion in an affidavit from the plaintiff's employee in which the employee testified he received between ten and fifteen inquiries during a given week evidencing confusion among the consuming public as to whether the defendant's product allegedly infringing marks were affiliated with the plaintiff's business. *See also Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431 (7th Cir.1985) (plaintiff's "employees testified to more than 180 incidents" of actual confusion over a five-month period); *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1361 (S.D.Fla. 1998) (admitting testimony that an employee "received over 3,000 phone calls by confused customers").

Sweet Hut has offered competent evidence showing actual confusion between the parties' marks by the relevant consuming public. Among other affidavit testimony and evidence, there is testimony from Sweet Hut employees about customers coming to pick up goods from Sweet Hut that were ordered from Sweet Talk and customers attempting to use Sweet Talk loyalty cards at Sweet Hut. There is also testimony from Cindy Liang, one of Sweet Hut's certified public accountants, that she asked Sweet Hut's owners about Sweet Talk because she "was under the impression that the Sweet Talk restaurant ... was owned by Sweet Hut." [9–9] at ¶ 4. There are also numerous incidents testified to by Sweet Hut employees in which their customers, friends, families, or acquaintances asked questions or made comments reflecting confusion about the existence of some affiliation between Sweet Talk and Sweet Hut. Taken as a whole, the evidence submitted by Sweet Hut is sufficient to support a finding of actual confusion by the consuming public. Therefore, this factor supports a finding of likelihood of confusion.

### 8. The Parties' Geographic Proximity

A final factor that has previously been recognized as relevant to the merits analysis is the geographic proximity between the parties. *See, e.g., Tana*, 611 F.3d at 780. Sweet Hut's current location is eleven miles away from Sweet Talk's restaurant, but Sweet Hut's planned Duluth location (which is scheduled to open in December) is across the street from Sweet Talk's location. Although more relevant to the question of the harm Sweet Hut would suffer without an injunction, this fact does weigh in favor of likelihood of confusion, as the parties operate in the same geographic area and therefore target the same consuming public. *Cf. Tana*, 611 F.3d at 780–81 (finding no likelihood of confusion where the plaintiff's mark was used only in Los Angeles and the allegedly infringing mark was used only in Atlanta).

### 9. Summary of Likelihood of Success

The Court finds that each of the factors analyzed above weighs in favor of finding that Sweet Hut is likely to succeed on the merits of its claims for trademark infringement.

### B. Irreparable Harm to Plaintiff Absent an Injunction.

In the Eleventh Circuit, "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's*, 147 F.3d at 1310 (internal punctuation omitted); *Foxworthy*, 879 F.Supp. at 1219 ("When a plaintiff makes a *prima facie* showing of trademark infringement, irreparable harm is ordinarily presumed.").

The parties dispute whether the traditional presumption of irreparable harm should continue to apply in light of the Supreme Court's decision in *eBay v. Mer-*

*cExchange,* 547 U.S. 388, 394, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), in which the Court questioned—but did not decide—the validity of this presumption in intellectual property cases. The Eleventh Circuit has expressly declined to decide whether the *eBay* decision, which addressed a patent claim, applies in actions for trademark infringement. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1228 (11th Cir.2008). For purposes of the instant motion, however, the Court need not rely on a presumption to find the existence of irreparable harm to Sweet Hut absent an injunction. Sweet Hut claims harm in the form of loss of control of its reputation, loss of trade, and loss of goodwill. These harms have previously been found sufficient to give rise to a finding of irreparable harm even absent the presumption of such harm existing. *See Ferrellgas Partners, LP v. Barrow,* 143 Fed.Appx. 180, 190 (11th Cir.2005) ("grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill"); *InternetShopsInc.com v. Six C Consulting, Inc.,* No. 1:09–cv–698–JEC, 2011 WL 1113445, at *6 (N.D.Ga. Mar. 24, 2011) (dilution of goodwill, loss of control of reputation, and loss of trade are sufficient to find irreparable injury); *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A.,* 734 F.Supp.2d 1262, 1278 (M.D.Fla.2010) (irreparable injury found from "substantial threat of consumer confusion and resulting irreparable harm to [the plaintiff's] reputation and the goodwill represented by its marks").

### C. Harm to Sweet Talk If an Injunction Issues

Sweet Talk contends that if an injunction issues and it is required to change its name, it will have to shut down, lay off its nineteen employees, incur almost $58,000 in expenses to change its name, and lose as much as $85,000 in operating revenues per month during the shutdown period. Sweet Talk submitted a declaration in which its owner, Tina Wang, testifies to the likelihood and extent of these harms. Sweet Hut counters that these estimations are extreme. Sweet Hut asks only that Sweet Talk cease operating under the name "Sweet Talk," so there is no need for the restaurant to shut down. Furthermore, Sweet Talk does not presently have any paper menus, it has only one billboard, and Sweet Hut has agreed to allow Sweet Talk to exhaust its current inventory of cups and other branded materials. Sweet Hut contends that Sweet Talk will suffer no more than approximately $11,000 in harm if the injunction is issued.

The Court acknowledges that issuing the requested injunction will cause Sweet Talk to incur some costs, but the Court finds that those costs are outweighed by the harm to Sweet Hut if the injunction were not to issue. Therefore, the balancing of the equities weighs in favor of issuing an injunction.

### D. Public Interest

Finally, the public's interest in protecting Sweet Hut's intellectual property rights weighs in favor of issuing injunctive relief.

### III. Conclusion

Based on the Court's analysis of each of the factors above and a balancing of the equities at issue, the Court will GRANT Plaintiffs motion for a preliminary injunction [9].

Effective Monday, October 13, at 12:01 a.m., Defendant shall be enjoined and restrained from using the marks SWEET TALK BAKERY & CAFE, SWEET TALK BAKERY & CAFE & Design, and any name or marks that are confusingly similar to SWEET HUT BAKERY &

CAFE in connection with promoting, marketing, selling, or identifying the company or its products, until such time as a final decision on the merits is made. On or before Monday, October 13, at 12:01 a.m., Defendant shall change its name, signs and advertising or otherwise cease operations under the name "SWEET TALK BAKERY & CAFE." Defendant shall be permitted to exhaust any current inventory of branded materials but shall not order new supplies or materials bearing the SWEET TALK mark or logo.

Pursuant to Federal Rule of Civil Procedure 65(c), within ten days from the date this Order is entered, Plaintiff shall post a $25,000 bond with the Clerk of this Court.