RESORTS INTERNATIONAL, INC., a Delaware Corp., Resorts International Hotel, Inc., a New Jersey Corp., Resorts International (Bahamas) 1984 Limited, a Bahamas Corp., Plaintiffs,

v.

GREATE BAY HOTEL AND CASINO, INC., t/a "Sands Hotel Casino and Country Club", a New Jersey Corp., Defendant.

Civ. A. No. 90–3057.

United States District Court,
D. New Jersey.

Sept. 1, 1992.

Clark E. Alpert, Roseland, NJ, for plaintiffs.

Roberto Rivera–Soto, Greate Bay Hotel and Casino, Inc., Harry Jay Levin, Silver, Levin & Claus, P.C., Atlantic City, NJ, for defendant.

## OPINION

GERRY, Chief Judge.

The parties are presently before the court upon motion of defendant Greate Bay Hotel and Casino ("the Sands") for reconsideration of our opinion and order of March 25, 1992, 1992 WL 64518. In that opinion, we granted the motion of plaintiff Resorts for summary judgment on liability, and denied defendant's motion for summary judgment on damages. The motion for reconsideration is confined to that portion of the opinion which granted summary judgment on liability. For the reasons expressed herein, the motion for reconsideration will be granted, and the portion of our opinion which granted summary judgment for Resorts will be vacated.

### BACKGROUND

This case involves a dispute over the use of the name "Paradise Isle" to describe a high-roller slot lounge in the Sands hotel and casino in Atlantic City, New Jersey. Plaintiff Resorts claims that the Sands' use of "Paradise Isle" infringes on Resorts own mark, "Paradise Island," which it uses to describe an island in the Bahamas on which is located its own and other hotel and casino resort complexes, and related services. In January 1991, after a two-day hearing during which testimony was taken, this court granted Resorts' motion for a preliminary injunction. The Sands was enjoined from use of the term "Paradise Isle" and was ordered to destroy all advertising materials and signs which employed that term. The Sands has complied with the terms of that preliminary injunction.

At the close of the preliminary injunction hearing, the court instructed the parties to consider whether that hearing should be consolidated with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). After having reviewed the transcripts of the hearing, both Resorts and the Sands agreed that consolidation would be fair and appropriate, and requested the court to so consolidate. However, after granting the preliminary injunction, we denied the motions to consolidate because of suspicions that more evidence on liability might be forthcoming.

Subsequently, Resorts moved for summary judgment on liability, and the Sands cross-moved for summary judgment on damages. The Sands declined to present any substantive arguments opposing Resorts' summary judgment motion, instead countering with its motion on damages. The Sands also did not present to the court any proofs on the liability summary judgment motion, instead choosing to rely entirely and without specification on the entire body of evidence presented at the preliminary injunction stage.

On March 25, 1992, this court granted the motion by Resorts for summary judgment on liability, and denied the Sands' cross-motion for summary judgment on damages. In granting summary judgment in favor of Resorts on liability, we relied on our findings regarding liability made in the preliminary injunction opinion, as the Sands had not set forth any additional evidence to defend against summary judgment. This motion for reconsideration followed. The Sands argues that, in light of Third Circuit law, our incorporation of findings made on a preliminary injunction was in error.

## DISCUSSION

### I. *Judicial Estoppel*

Before treating with the issues raised on this motion for reconsideration which directly touch upon our March 25, 1992 opinion, we first address the Sands' judicial estoppel argument, which it raises in its reply brief on this motion, and in which it argues that plaintiff's complaint should be dismissed in its entirety.[1]

■ The doctrine of judicial estoppel—sometimes referred to as the doctrine of preclusion against inconsistent positions—is a discretionary doctrine which precludes a party from asserting a legal or factual position in a legal proceeding that contradicts or is inconsistent with a position asserted by the same party in any other proceeding. *See, e.g. Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Scarano v. Central R. Co.,* 203 F.2d 510, 512–13 (3d Cir.1953). A concern for fairness, and for the integrity of the courts, is at the source of this doctrine:

> A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing "fast and loose with the courts" which has been emphasized as an evil the courts should not tolerate. And this is more than affront to judicial dignity. For intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.

*Scarano,* 203 F.2d at 512–13 (citations omitted). *See also* C. Wright, A. Miller & E. Cooper, 18 *Federal Practice and Procedure,* § 4477, at 779 (1981 & Supp.1992) (doctrine aims to "avoid unfair results and unseemliness"). Thus, the doctrine of judicial estoppel "focuses on the relationship between the

litigant and the judicial system." *Delgrosso v. Spang and Co.,* 903 F.2d 234, 241 (3d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990).

■ These are the boundaries of the doctrine on which the Sands now relies. The Sands submits that although Resorts has continually argued there is sufficient cross-marketing between Paradise Island in the Bahamas and Resorts in New Jersey to establish a necessary element of an unfair competition or trademark infringement claim, it has also in various other cases within this district and in the New Jersey state court maintained that there are no minimum contacts between Paradise Island in the Bahamas and the state of New Jersey for purposes of personal jurisdiction. The other cases to which the Sands refers are *Schettino v. Paradise Beach In, Ltd.,* No. 91–1928, 1992 WL 533252 (D.N.J., March 13, 1992); *Mitchell v. Britania Beach Hotel and Casino,* No. 86–3575 (D.N.J., April 19, 1992); *Anderson v. Resorts International, Inc.,* No. 91–4827 (N.J.Law Div., Mercer County). In *Schettino* and *Mitchell,* both personal injury actions involving accidents which occurred at Paradise Island in the Bahamas, the district court dismissed defendant Resorts International (Bahamas) 1984 Ltd. from the actions for lack of personal jurisdiction. In each case, court found that plaintiffs could not satisfy the "minimum contacts" requirement of personal jurisdiction. Even more recently, the New Jersey state court reached the same conclusion when confronted with a motion to dismiss for lack of personal jurisdiction in *Anderson. See Anderson v. Resorts International, Inc.,* No. 91–4827 (N.J.Law Div., Mercer County, July 2, 1992).

The Sands views these two issues, cross-marketing and personal jurisdiction, as equivalent and interchangeable; and asserts that the positions which Resorts has taken as to them are contradictory. The Sands' contends that under the doctrine of judicial estoppel Resorts should not be permitted to advance such contradictory positions. The Sands further argues that the existence of

---

**1.** We note that this "request" to dismiss is framed in the context of this reconsideration motion; no motion to dismiss has been filed.

these so-called contradictory positions requires dismissal of this entire action, under the doctrine of judicial estoppel. We disagree.

■ First, a motion for reconsideration is an improper vehicle for raising this judicial estoppel argument. In the two-year course of this litigation, the Sands has never raised, nor even alluded to, the argument. According to the Sands, it was not aware of these cases, in which the opinions cited were unpublished, until after the filing of the instant motion for reconsideration.[2] However, it is well established in this district that a motion for reconsideration is an extremely limited procedural vehicle. Local Rule 12 I, which governs such motions, provides that they shall be confined to the "matters or controlling decisions which counsel believes the Court has *overlooked*." (emphasis added). Courts in this district have consistently interpreted the word "overlooked" as the dominant term in the rule. Only dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration. *Pelham v. United States*, 661 F.Supp. 1063, 1065 (D.N.J.1987). *See also Egloff v. New Jersey Air Nat. Guard*, 684 F.Supp. 1275, 1279 (D.N.J.1988); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159 (D.N.J.1988).[3]

The Sands asserts that, in this case, it could not have found the cases it now urges upon us before the summary judgment mo-

tion was decided or before the instant motion was filed, because they were not then decided. It encourages us to interpret Rule 12 I as stating a different standard for what will be reviewed on a motion for reconsideration—specifically, whether the facts brought to the court's attention for the first time on a reconsideration motion were known or should have been known to the moving party at the time of the original motion. We reject this suggestion, for two reasons. First, there is no basis for this standard of review either in the text of the rule itself, or in the interpretive case law. Second, as the court advised counsel at oral argument, to adopt this standard would mean keeping the record open forevermore—a practical impossibility as well as an equitable transgression. Therefore, the Sands' judicial estoppel argument may not be employed, on this motion for reconsideration, to dismiss the action.[4]

■ Moreover, even if the procedural restrictions of a motion for reconsideration did not render the judicial estoppel argument invalid, the substantive deficiency of the argument would do so. The issue of cross-marketing for purposes of establishing a presence in New Jersey sufficient to state a claim for unfair competition or trademark infringement, and the issue of minimum contacts with a forum for purposes of being hailed into a foreign court, are not analogous. They involve different inquiries, and have entirely different ramifications. For example, in *Schettino* the court considered, as part of its minimum contacts analysis, defendant's

---

**2.** Of the two federal cases, the opinion in *Mitchell* was not filed until after the instant motion for reconsideration was filed, but the opinion in *Schettino* was filed prior to the filing of the instant motion. In the state court, the dismissal motion was filed after the filing of the instant motion.

**3.** The Sands cites *Panna v. Firstrust Sav. Bank*, 760 F.Supp. 432, 435 (D.N.J.1991) in support of its contention that the court may consider new evidence on a motion for reconsideration. The court held in *Panna* that "[t]here is nothing to prevent the court from examining new facts or evidence that might lead to a different result if considered by the court." In support of this proposition, *Panna* cited to *In the Matter of Arbitration between Dow Jones & Co., Inc. v. Irwin & Leighton, Inc.*, 1990 WL 8733, U.S.Dist. LEXIS

1068 (D.N.J. Jan. 29, 1990) and *Maldonado v. Lucca*, 636 F.Supp. 621 (D.N.J.1986). We feel that this position is without foundation, either in the language of Rule 12 I itself or in the vast majority of the interpretive cases of this court. We are in fact bound *not* to consider such new materials, lest the strictures of our reconsideration rule erode entirely.

Furthermore, we note that the Sands cites to *Panna* in the context of its arguments on reconsideration of our summary judgment opinion of March 25, 1992, and not in the context of its judicial estoppel argument in favor of dismissal.

**4.** We note additionally that this is the first time the Sands has ever requested this court to dismiss the action. It goes without saying that we cannot grant, on a motion for reconsideration, a request which has never before been made.

headquarters, property, incorporation, tax payments, employees and agents. None of these are involved in a cross-marketing analysis. And a show of advertising, which may be sufficient to establish the cross-marketing element of plaintiff's claim, is not enough to establish personal jurisdiction over that party in another case. *See, e.g. Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 154 (D.N.J.1990).

Finally, and perhaps most importantly, the right to be free from being forced to defend against a claim in a distant forum implicates considerations of due process and fair play, with their constitutional overtones, far different from the considerations associated with the right to bring suit under a particular statute. The two concepts are so unrelated that the position which a party takes as to one is irrelevant to the position the same party takes on another. They cannot, by their very nature, be inconsistent.[5] For all these reasons, the Sands' judicial estoppel argument must fail.[6]

## II. *Reconsideration of Summary Judgment on Liability*

The basis for the Sands' reconsideration motion is our reliance, in our opinion of March 25, 1992, on credibility determinations which we made in our preliminary injunction opinion of January 18, 1991. The Sands has brought to the court's attention a case which it urges as direct precedent on the issue of such reliance, *Country Floors, Inc. v. Gepner,* 930 F.2d 1056 (3d Cir.1991).

In the summary judgment opinion, on the issue of liability, the Sands presented to the court no factual submissions to demonstrate a genuine issue of material fact. Instead, the Sands as the non-movant relied upon the entire body of evidence presented during the two-day preliminary injunction hearing which this court had held in October 1990. Despite

prompting from the court, the Sands declined to identify any particular items from this voluminous record to which our attention should specifically be drawn. Resorts argued that although we considered factual issues in reaching our legal conclusions attendant to granting the preliminary injunction, it was within our authority to make findings of fact at that procedural posture; and that because the Sands had submitted no new evidence since, and had indicated that it viewed the evidence it submitted at the hearing as the totality of its case on liability, we could properly rely on our findings of fact and find that no genuine issues of material fact remained to impede a grant of summary judgment as a matter of law. We agreed with Resorts and granted summary judgment on liability in its favor.

It is against this backdrop that we consider *Country Floors.* The district court in *Country Floors,* also a Lanham Act case, denied the plaintiff's motion for a preliminary injunction because plaintiff had failed to show likelihood of confusion. The district court then granted defendant's summary judgment motion, relying in part on credibility determinations it had made in the course of denying the preliminary injunction motion. The district court relied on those determinations while rejecting additional evidence offered by plaintiffs after discovery taken during the interim between the preliminary injunction motion and summary judgment.

The Third Circuit found that the district court was in error when it considered credibility findings made in denying the preliminary injunction motion. The court held that the principles of Fed.R.Civ.P. 56 as enunciated by the Supreme Court in *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and "the nature of the record before a court on a Rule 56(c) motion

---

**5.** The Sands has directed the court's attention to a recent decision which it suggests we view as dispositive on the issue of judicial estoppel. *See United States v. Shaffer Equipment Co., et al.,* 796 F.Supp. 938 (S.D.W.Va.1992). However, we see no parallels, either factual or legal, between this case and *Shaffer.*

**6.** The Sands submits that the doctrine of judicial estoppel requires dismissal of plaintiff's complaint regardless of whether it is raised on a

motion for reconsideration or a motion for relief from judgment under Fed.R.Civ.P. 60(b). However, we will not consider the ramifications of a Rule 60(b) motion, both because the Sands has not actually made such a motion and procedurally cannot bootstrap its argument onto a motion it has not made; and because we have found no merit in this judicial estoppel argument as a substantive matter.

logically imply that credibility evaluations are inappropriate in deciding a motion for summary judgment." *Country Floors*, 930 F.2d at 1061. Accordingly, "[i]t is error to rely on the previous resolution of credibility issues in deciding a motion for summary judgment because such reliance cannot co-exist with the requirement of Rule 56(c) that no genuine issues of material fact remain outstanding." *Id.* At the heart of the court's decision was the axiom that on a motion for summary judgment, in determining whether genuine issues of material fact exist, the district court must draw all inferences in favor of the non-movant. *See e.g. Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). The district court's responsibility is limited to identifying whether there is a genuine issue for trial. *Country Floors*, 930 F.2d at 1062.

In one significant way, the case at bar is distinguishable from *Country Floors*. At the close of the two-day preliminary injunction hearing, the court suggested that counsel consider whether they wished for that hearing to be consolidated with a trial on the merits, pursuant to Fed.R.Civ.P. 65(a)(2). Both Resorts and the Sands indicated to the court that they desired such consolidation. This mutual agreement to consolidate the preliminary injunction hearing with a full trial on the merits occurred after all the evidence had been submitted by both parties during the hearing, after the parties had an opportunity to review the transcript, and was memorialized by the Sands in its Proposed Findings of Fact and Conclusions of Law. On summary judgment, it was this course of events which led the court to conclude that both parties were satisfied that the entirety of their case on liability had been presented to the court, as memorialized in the preliminary injunction record; and that since the Sands had not supplemented that record on summary judgment, not only that record but also our conclusions reached therefrom could

reasonably be relied upon. Indeed, such a request for consolidation could be construed, under these circumstances, as a waiver of the right to present any further proofs, or even as a waiver of the right to a jury trial.

■ However, despite this important distinction, we read *Country Floors* as setting forth a general principle not intended to be limited to the facts of that case. The opinion is phrased in general terms not specifically linked to the facts: "Credibility determinations are appropriate to a bench verdict. They are inappropriate to the legal conclusions necessary to a ruling on summary judgment." *Country Floors*, 930 F.2d at 1062. Moreover, "[r]eliance on credibility determinations in deciding Rule 56(c) motions may also improperly shift the ultimate burdens of production and persuasion, [or] deprive the non-movant of the benefit of competing inferences...." *Id.* The breadth of *Country Floors* thus seems unchecked even by factual distinctions as extreme as appear here.

Accordingly, despite the significant factual distinction between the case at bar and *Country Floors*, we find that the principles articulated in *Country Floors* dictate a change in our analysis in considering Resorts' motion for summary judgment on liability. The factual findings which we made in granting the preliminary injunction cannot serve as the basis, in any way, for our consideration of the summary judgment motion. Therefore, the Sands' motion for reconsideration of our grant of summary judgment on liability in favor of Resorts will be granted.[7]

### III. *Summary Judgment on Liability*

Because we have decided to reconsider our grant of summary judgment on liability, we must now approach that motion from scratch. The Sands has argued that the entirety of its submissions on the preliminary injunction motion, testamentary as well as documentary, also constitutes its submissions in defending against Resorts' motion for summary judgment. Thus, in deciding that motion

7. We are disturbed by the prospect that, by requesting consolidation wholeheartedly but then backing away from the position which such a request necessarily implied after the court decided in Resorts' favor, the Sands perhaps has exhibited the kind of "playing fast and loose" with

the court which the doctrine of judicial estoppel, itself invoked by the Sands for another purpose on this motion, seeks to prevent. However, in light of our decision here, we will not pursue this avenue further than this brief comment.

anew, we emulate the Third Circuit[8] by reviewing afresh the entire body of evidence presented at the preliminary injunction hearing and as well as all materials regarding liability submitted on summary judgment, to determine whether a genuine issue of material fact exists which would prevent the grant of summary judgment to Resorts.[9] For the reasons enumerated in our reconsideration discussion, our preliminary injunction opinion is not a part of the record to be considered on summary judgment.[10]

### A. Establishing Liability in Lanham Act Cases

■ Resorts seeks relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), which provides:

> Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... which—(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

There are two elements to recovery under section 43(a). First, plaintiff's mark must be a valid, legally protectible mark. *Transfer Print Foils, Inc. v. Transfer Print America, Inc.*, 720 F.Supp. 425, 435 (D.N.J.1989). Second, there must be a "likelihood of confusion"

between plaintiff's mark and defendant's mark. *Id.*

■ Lack of registration does not prevent a plaintiff from acquiring proprietary rights to use of its mark. "Federal courts have long held that § 43(a) of the Lanham Act extends protection to unregistered trademarks on the principle that unlicensed use of a designation serving the function of a registered mark constitutes a false designation of origin and a false description or representation." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir.1986). *See also* 4A McCarthy, Trademarks & Unfair Competition § 27:2 (2d ed. 1984) (Under the Trademark Law Revision Act of 1988 "all of the statutory remedies available to the owner of a registered mark are now equally available to the plaintiff who uses § 43(a) as the vehicle to assert claims of infringement of unregistered marks.").

■ Distinctiveness is the touchstone when determining a mark's protectibility:

> A designation may only receive protection, however, if the public recognizes it as identifying the claimant's "goods or services and distinguishing them from those of others." Such identification depends, in the first instance, on a designation's level of inherent distinctiveness, and for this purpose, courts have divided designations into four categories: arbitrary (or fanciful) terms, which bear "no logical or suggestive relation to the actual characteristics of the goods [or services]"; suggestive terms, which suggest rather than describe the

---

**8.** Despite the procedural error made by the district court, the *Country Floors* court went on to note that "the district court's order could still be affirmed if the record nevertheless demonstrates the absence of any genuine issue of material fact." 930 F.2d at 1063.

**9.** The materials provided to the court on summary judgment which pertained to the Sands' motion for summary judgment on damages are not considered here. Nor are the factual submissions presented by the Sands on its reconsideration motion, for the reasons expressed in our discussion of the restrictions of reconsideration motions in this district, *supra* at 831. This includes the deposition of Carol Jerrahnian, which

the Sands both took and submitted after oral argument was heard on the reconsideration motion. This is precisely the sort of supplementing of the record which the limitations of a reconsideration motion were designed to prevent.

**10.** We note that, in its reconsideration papers and at oral argument, the Sands urged this court not only to reconsider its opinion and deny Resorts' summary judgment motion; but also to grant summary judgment on liability in favor of the Sands. However, regardless of whether the grant of summary judgment for Resorts stands or falls, we cannot grant summary judgment on liability to the Sands. The Sands has never moved for summary judgment on liability, but rather only on damages.

characteristics of the goods [or services]; descriptive terms, which describe a characteristic or ingredient of the article to which it refers, and generic terms, which function as the common descriptive name of a product class.

*Honickman*, 808 F.2d at 296 (citations omitted). Despite the difficulty in distinguishing among levels of distinctiveness, "these distinctions are crucial." *Id.*, 808 F.2d at 297.

If we hold a term arbitrary or suggestive, we treat it as distinctive, and it automatically qualifies for trademark protection at least in those geographic and product areas in which the senior user applies it to its goods. If we hold a mark descriptive, a claimant can still establish trademark rights, but only if it proves that consumers identify the term with the claimant, for that identification proves secondary meaning.

*Id.* Thus, a mark which is either arbitrary or suggestive is protectible even without evidence of secondary meaning; while a descriptive mark may be protectible if the holder can demonstrate secondary meaning.

The distinctions among arbitrary, suggestive, and descriptive marks can be confusing, and are best understood by way of illustration. "Whether a mark is weak and descriptive or strong and distinctive can be determined only by reference to the goods or services that it identifies. Thus, 'the mark BRILLIANT may be "descriptive" on diamonds, "suggestive" on furniture polish, and "arbitrary" on canned applesauce.'" *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir.1987) (citation omitted).

■■■ Once protectibility is established, the likelihood of consumer confusion between plaintiff's and defendant's marks becomes the test for infringement. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *Holiday Inns, Inc. v. Trump*, 617 F.Supp. 1443, 1464 (D.N.J.1985). "Likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified with a similar mark." *Scott Paper Co. v. Scott's*

*Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir.1978). "Likelihood of confusion should be determined by viewing the two marks from the perspective of an ordinary consumer of the goods or services." *Dominion Bankshares Corp. v. Devon Holding Co.*, 690 F.Supp. 338, 345 (E.D.Pa.1988) (citation omitted).

■■■ The likelihood of confusion test involves a purely legal, rather than factual, determination. *See, e.g., Sears, Roebuck & Co. v. Johnson*, 219 F.2d 590 (3d Cir.1955). Because likelihood of confusion is a question of law, it is an appropriate issue for summary judgment. *WSM, Incorporated v. Tennessee Sales Co.*, 709 F.2d 1084, 1086 (6th Cir.1983).

■■■ To determine whether a plaintiff has shown a likelihood of confusion, the Third Circuit has developed a roster of seven factors which a district court should consider in determining whether a plaintiff has demonstrated a likelihood of confusion sufficient to merit recovery under section 43(a). As enunciated in *Scott Paper*, the factors are as follows:

(1) the degree of similarity between the plaintiff's mark and the alleged infringing mark;

(2) the strength of the plaintiff's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the defendant's intent in adopting the mark;

(6) the evidence of actual confusion;

(7) the extent to which the targets of the parties' sales efforts are the same;

*Id.*, at 1229. A likelihood of confusion exists if parties offer competing services, such as the casinos now before us, and if the court determines that these factors are present in sufficient number or intensity. *American Home Products Corp. v. Barr Laboratories, Inc.*, 656 F.Supp. 1058, 1068 (D.N.J.1987), *aff'd* 834 F.2d 368 (3d Cir.1987). *See also*

*Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir.1983).

### B. *Existence of Genuine Issue of Material Fact*

■ Our responsibility here is to determine whether there exists a genuine issue for trial. It is the burden of the movant, Resorts, to demonstrate to the court that there is no genuine issue of material fact. However, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but.... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The first aspect of liability is the protectibility of plaintiff's mark. Accordingly, we begin by scrutinizing the record to ascertain whether any genuine disputed fact as to this issue exists. While the Sands contested the protectibility of Resorts' "Paradise Island" mark at the preliminary injunction hearing, it did not argue on summary judgment that there was a genuine issue of material fact as to this question. In so finding, we look to the Sands' Statement of genuine issues of material fact, filed pursuant to Local Rule 12 G. In that statement there is no discernable contest to the protectibility of plaintiff's mark.

Thus, we find that no genuine issue of material fact exists on the protectibility aspect of section 43(a) analysis. Next, we approach the task of determining whether a genuine issue of material fact exists regarding a likelihood of confusion by applying the *Scott Paper* factors, which by their very nature define materiality on this aspect of liability. Resorts argues that, even approaching the record from scratch, there are no genuine issues of material fact regarding likelihood of confusion which would preclude an entry of summary judgment in its favor. We disagree.

We first look to whether there is any genuine triable dispute as to the degree of similarity between the plaintiff's mark and the alleged infringing mark. Resorts submitted an affidavit of a William A. Stewart, professor of linguistics, regarding the similarity of the marks "Paradise Island" and "Paradise Isle." In response thereto, the Sands has submitted various affidavits and photographs depicting the use of the name "Merv Griffin" as a preface to plaintiff's "Paradise Island" mark. From this we infer that "Merv Griffin" may actually be a part of plaintiff's mark, and even the dominant aspect thereof.[11] Resorts disputes that "Merv Griffin" is in any way a portion of their mark, characterizing it instead as merely a preface—a "house name" which changes with ownership but which has no impact upon the core mark, "Paradise Island."

Accordingly, we are faced with a genuine issue of fact which is material to the inquiry about the degree of similarity between plaintiff's and defendant's marks. We think that the inquiry, when framed in terms of "Paradise Island" vs. "Paradise Isle," is different from the inquiry framed in terms of "Merv Griffin's Paradise Island" vs. "Paradise Isle." This is despite the intuitive similarity which "Paradise Island" and "Paradise Isle" share. When faced with this genuine, material factual dispute, we cannot reach the issue of likelihood of confusion as a matter of law.

■ Under certain circumstances, it is possible for summary judgment to be granted despite the existence of a genuine factual issue if, despite resolving that issue in the non-movant's favor, the non-movant still could not prevail as a matter of law. However, that cannot be the case here. In addition to the issue as to similarity, there is a genuine issue of fact as to at least one other factor, that which apparently prompted the Sands' motion for reconsideration: the issue

---

11. We take this occasion to note that, in all its submissions to the court regarding this summary judgment motion, the Sands has not actually made any arguments as to either the existence of a genuine dispute in the context of *Scott Paper*, or the conclusions which this court should reach in deciding the *Scott Paper* factors as a matter of law. Thus, our obligation to draw all inferences in favor of the Sands as the non-movant is strained to its very limits. It is not a question of accepting the inferences which the Sands urges upon us; rather, and far more awkwardly, it is a matter of our imagining inferences which the Sands has never drawn itself. However, regardless of the source of the inferences, they must be drawn in favor of the Sands if we are to comply with Fed.R.Civ.P. 56 and *Country Floors*.

of the Sands' intent to infringe on Resorts' "Paradise Island" mark. In our preliminary injunction opinion, we found such intent, having weighed evidence and made credibility determinations. As we may not now do so on summary judgment, the initial credibility questions and evidentiary contradictions present at the preliminary injunction stage still remain. There is, therefore, a genuine issue of material fact as to another *Scott Paper* factor, the intent to infringe. Thus, as we are confronted with at least two genuine issues of fact, which are material to what are arguably the two most important Scott Paper liability factors, we will not attempt to determine whether Resorts could still recover even if those issues are resolved in the Sands' favor. To do so would violate our obligation on summary judgment to "bend over backward" in favor of the non-movant.

Accordingly, having found such genuine issues of material fact upon reconsidering the motion for summary judgment on liability, that motion will be denied.

*Summary Judgment on Damages* [12]

The Sands has moved for summary judgment in its favor on the issue of damages. It posits that even if found liable to Resorts, the Sands does not owe plaintiff any monetary award. We begin our discussion by reviewing the various forms of relief a plaintiff may recover under the Lanham Act. A prevailing plaintiff under section 43(a) may recover under section 35(a) of the Lanham Act, 15 U.S.C. 1117(a), as follows:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the

principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

The Sands raises two substantive arguments in favor of summary judgment on damages. First, it argues that actual confusion is necessary to an award of damages under section 35(a)(2), and that Resorts did not demonstrate actual confusion at the preliminary injunction stage and should not now be allowed another opportunity to show actual confusion. Second, the Sands argues that Resorts is not entitled to profits under section 35(a)(1) because its "Paradise Island" mark, while protectible, was not registered; because even if entitled to an accounting of the Sands' profits, Resorts has not shown harm suffered; and because Resorts has not proven what the Sands' sales and profits benefitting from use of the infringing mark were.

Resorts responds first that the kind of actual confusion which is but one of the many *Scott Paper* factors tending to prove likelihood of confusion and therefore liability, is different from the kind of actual confusion necessary to prove damages; and that there remains a genuine issue of fact as to whether that kind of actual confusion occurred. Second, Resorts argues that even if it is not entitled to compensatory damages because it cannot show actual confusion of any "variety", it is entitled to the Sands' profits during the period of infringement.

We first consider the legal criteria for awarding damages and profits under section 35(a).

### A. *Compensatory Damages Under Section 35(a)(2)*

To recover compensatory damages under section 35(a)(2), a plaintiff "must

---

12. As discussed herein, this opinion will supersede our opinion of March 25, 1992, and our order of that date, with respect to Resorts' motion for summary judgment on liability. However, our discussion and decision on the Sands' motion for summary judgment on damages, also chronicled in the March 25, 1992 opinion and order, remains substantively unchanged. In order to avoid confusion, and maximize efficiency, we will ensure that only one opinion on these cross-motions need be referred to by the parties

or by the court. Thus, we repeat here, with minor variation necessitated by our reconsideration opinion, our reasoning in support of the denial of the Sands' motion for summary judgment on damages. The conclusions reached here will be binding for purposes of the trial. And finally, we note that although the decision on damages is being reprinted and re-filed here, because it is substantively the same decision as earlier the clock for reconsideration does not begin running afresh.

show not only that the defendant's advertisement was false but also that this falsification actually deceives a portion of the buying public. This does not place upon the plaintiff a burden of proving detailed individualization of loss of sales. Such proof goes to quantum of damages and not to the very right to recover. However, there must be a showing of some customer reliance on the false advertisement." *Parkway Baking Company v. Freihofer Baking Company*, 255 F.2d 641, 648–49 (3d Cir.1958). Thus, the test for right to recover compensatory damages under section 35(a)(2) is whether plaintiff has shown an actual diversion of consumers.

■ The Sands points out that in our preliminary injunction opinion we found that there was no "actual confusion" in the *Scott Paper* sense; and that this finding was based on our conclusion that "Resorts has submitted no evidence that any of its potential customers went to the Sands' "Paradise Isle" and patronized it under the mistaken impression that it was related to Paradise Island." Opinion, at 38. They apparently argue both that we specifically found there was no diversion of consumers, and diversion is necessary to recover damages under *Parkway Baking;* that we specifically found there was no actual confusion, and that actual confusion is necessary to recover damages under *Parkway Baking.*

■ We initially note that the *Parkway Baking* standard makes no mention of "actual confusion." Indeed, "actual confusion" as a factor to be considered did not arise until *Scott Paper,* two decades after *Parkway Baking.* More importantly, *Scott Paper,* in establishing actual confusion as a factor in finding likelihood of confusion, was concerned with liability under section 43(a), and not right to recover damages under section 35(a)(2). At the preliminary injunction stage, we were not presented with proofs on damages; nor does preliminary injunction as a procedural mechanism concern itself with damages. In light of this, we must conclude that our decision regarding actual confusion, based on lack of diversion, was merely a preliminary finding. It was not necessary to our ultimate determination that there was

likelihood of confusion. And it did not speak to damages.

Plaintiffs have argued that, in showing diversion or actual confusion on the damages aspect, they would present proofs far different from those offered at the preliminary injunction: expert testimony regarding "subliminal" or unconscious confusion leading to equally unconscious diversion of consumers, as opposed to affidavits of a few customers saying they were consciously "bewildered" about the Sands' use of "Paradise Isle."

There are indeed different levels of confusion, as courts have recognized in determining liability. *See Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 486 F.Supp. 414 (S.D.N.Y.1980), *aff'd*, 687 F.2d 563 (2d Cir. 1982). In addition to "mistake" and "confusion as to source," there is "a third, and perhaps most significant, kind of confusion which is likely to work to plaintiff's detriment—that is, defendants' ability to gain a foothold in plaintiff's market by exploiting subliminal or unconscious association with plaintiff's well-known name." *Id.* at 428. *See also Blumenfeld Development Corp. v. Carnival Cruise Lines, Inc.*, 669 F.Supp. 1297, 1320 (E.D.Pa.1987); *Trump v. Caesars World, Inc.*, 645 F.Supp. 1015, 1022 (D.N.J. 1986); *Londontown Manufacturing Co. v. Cable Raincoat Co.*, 371 F.Supp. 1114, 1118 (S.D.N.Y.1974).

We think plaintiffs should have the opportunity to prove such subliminal or unconscious confusion, and the diversion of customers that results from such confusion, in recovering damages. Such a showing of diversion would satisfy the *Parkway Baking* standard. Since the preliminary injunction stage did not address itself to this type of confusion or diversion, plaintiffs are not foreclosed from presenting proofs at trial.

■ Finally, the Sands argues that plaintiffs have not met their Rule 56 burden to "set forth specific facts showing that there is a genuine issue for trial." However, Resorts has submitted expert reports and affidavits on the issue of consumer diversion and unjust enrichment. These satisfy Resorts' burden of establishing that there is a genuine issue of disputed fact. Accordingly, the Sands is not entitled to summary judgment

on compensatory damages under section 35(a)(2).[13]

### B. *Accounting for Profits Under Section 35(a)(1)*

■ Turning to recovery of defendants' profits under section 35(a)(1), we initially recognize that no showing of actual confusion or diversion of customers, or of actual loss, is necessary to obtain an accounting for profits under section 35(a)(1). *See, e.g., Web Printing Controls Co. v. Oxy–Dry Corporation,* 906 F.2d 1202, 1205 (7th Cir.1990); *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154, 161 n. 15 (1st Cir.1977). This is because the remedy of profits flows "not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the need for deterrence...." *Web Printing,* at 1205.[14]

■ We note next that, the Sands' protracted and circuitous argument to the contrary notwithstanding, this type of recovery is available to the holder of an unregistered mark. Section 35(a) provides for recovery for "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, *or* a violation under section 43(a) [15 U.S.C. § 1125(a)]...." The Sands would have us read the disjunctive "or" as the conjunctive "and," thus making registration a prerequisite to any recovery. This is an erroneous construction of the statute. Furthermore, recovery under section 35(a) is also subject to the provisions of sections 29 and 32, 15 U.S.C. §§ 1111 and 1114. While sections 1111 and 1114(1) deal with registered trademarks, section 1114(2) applies to persons "bringing an action under section 43(a) [15 U.S.C. § 1125(a)]...." Plaintiff's action is brought under section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), and therefore explicitly subject to the profits entitlement of section 35(a)(1).

The prevailing case law supports this conclusion. In *Knorr–Nahrmittel A.G. v. Reese Finer Foods Inc.,* 695 F.Supp. 787, 795 (D.N.J.1988), we held that the remedial scheme of section 35(a) applied to section 43(a) actions, and in so doing adopted the reasoning of *Rickard v. Auto Publisher, Inc.,* 735 F.2d 450, 458 (11th Cir.1984): "section 35(a) relief applies to section 43(a) actions involving unregistered trademarks. To hold otherwise would undermine Congress' goals of simplifying trademark practice, establishing uniformity and providing ample relief." *See also U–Haul International, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1042 (9th Cir.1986) (there is "no reason to distinguish between registered and unregistered trademarks.... The type of conduct that these damages should deter is unrelated to the type of intellectual property protected"); *Metric & Multistandard Components Corp. v. Metric's, Inc.,* 635 F.2d 710 (8th Cir.1980). While these cases were decided prior to the 1988 amendment to the Lanham Act specifically subjecting section 43(a) to the remedies provisions of section 35(a), since adoption of that amendment other courts have reaffirmed the pre-amendment application of section 35(a) to all section 43(a) actions. *See Neva, Inc. v. Christian Duplications Int'l., Inc.,* 743 F.Supp. 1533, 1542 (M.D.Fla.1990); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1126 (5th Cir.1991), *aff'd,* —— U.S. ——, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Considering both our statutory construction of section 35(a) and the weight of the case law on that point, the Sands' position has no merit and must be rejected.

■ Finally, section 35(a) requires us to apply "the principles of equity." We cannot know, until after a trial on liability, whether or not equity dictates in favor of Resorts. Certainly, the Sands has proven nothing which would conclusively indicate, at this

---

**13.** We note that ultimately plaintiff must prove actual damages in order to recover under section 35(a)(2). *See Caesars World, Inc. v. Venus Lounge, Inc.,* 520 F.2d 269 (3d Cir.1975); *Brand v. NCC Corp.,* 540 F.Supp. 562, 565 (E.D.Pa. 1982).

**14.** Courts in the Third Circuit have repeatedly awarded profits to plaintiffs even where there

has been no proof of actual damages or direct confusion. *See, e.g., Century Distilling Co. v. Continental Distilling Corp.,* 205 F.2d 140, 144 (3d Cir.1953), *cert. denied* 346 U.S. 900, 74 S.Ct. 226, 98 L.Ed. 400 (1953); *Brand v. NCC Corporation,* 540 F.Supp. 562 (E.D.Pa.1982); *Jones Apparel Group, Inc. v. Steinman,* 466 F.Supp. 560 (E.D.Pa.1979).

juncture, that the equities do not and never could weigh in Resorts' favor. Moreover, an order for an accounting of profits lies within the discretion of the court. Under the circumstances, we exercise that discretion here. If Resorts is ultimately able to prove its case on liability, and accounting of profits by the Sands will be required.

 Next, the Sands argues that Resorts has neither shown "harm suffered" nor proven the Sands' sales, and thus cannot recover profits under section 35(a)(1). We first address the "harm suffered" argument. The Sands contends that in order to show that the equities are in Resorts' favor, Resorts must show actual harm suffered. We disagree. There is no support for this position. Indeed, we see little or no distinction between actual confusion or diversion, which we have noted is not required in recovering profits, and "harm suffered." Furthermore, there is ample basis in the record, specifically regarding the degree to which the "Paradise Isle" theme has proven profitable for the Sands, for an equitable accounting of profits. Among other things, an accounting is appropriate if a defendant has been unjustly enriched. *See, e.g., Robert Bruce, Inc. v. Sears, Roebuck & Co.,* 343 F.Supp. 1333, 1349 (E.D.Pa.1972). Plaintiffs have submitted evidence sufficient to create a genuine issue of material fact as to whether the Sands was in fact unjustly enriched by its use of the infringing "Paradise Isle" mark.

We therefore reach the Sands' final argument, that Resorts has failed to prove the Sands' sales as a result of its use of "Paradise Isle." The thrust of its argument is that Resorts has not proven causation between the Sands' revenues and the infringement. Again, we must disagree with defendant. Section 35(a), 15 U.S.C. § 1117(a), states in pertinent part: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Plaintiff has submitted, both in the form of relying on defendant's testimony at the preliminary injunction hearing and in the form of expert reports and affidavits, evidence as to the amount of the Sands' profits. The responsibility therefore shifts to the Sands to "prove all elements of cost or deduction claimed." This includes deductions resulting from lack of connection between the infringing mark and the actual sales.

Accordingly, we hold that Resorts is entitled to an accounting of the Sands profits realized as a result of its use of the infringing "Paradise Isle" mark.

C. *Application of the Legal Standards*

 The Sands has argued that Resorts had its opportunity to present proofs regarding both compensatory damages and profits at the preliminary injunction stage. However, what the Sands has failed to realize is that the testimony and written submissions at that stage only bespoke liability. We did not address at all the actual amount of damages Resorts might have sustained, or profits the Sands might have reaped, or even Resorts' ultimate right to recover. Indeed, in granting a preliminary injunction the only inquiry remotely related to damages is whether plaintiff will sustain "irreparable injury" if the injunction is denied. *See Valentine v. Beyer,* 850 F.2d 951, 955 (3d Cir.1988); *ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987). Damages are not a consideration at that early stage. Therefore, Resorts is not limited, as the Sands would have us find, to proofs presented then.[15]

This requires us to examine the proofs, in the form of affidavits, offered by each party on both the damages and profits aspects of the Sands' motion. The evidence submitted by the parties, including but not limited to evidence on amounts of profits, is contradictory in many respects; and relying on it would entail factual evaluations which this court cannot undertake on summary judgment. The moving party has the burden of demonstrating that there is no genuine issue

15. We find it highly ironic, to say the least, that the Sands employed this argument in presenting its motion for summary judgment on damages, but then offers the opposite argument on reconsideration of summary judgment on liability. This is yet another example of the Sands trying to have it both ways. The principle that the findings made at the preliminary injunction stage cannot be incorporated into summary judgment must be applied universally, not piecemeal as it suits a party.

of material fact. Here, the moving party, defendant the Sands, cannot meet this burden. We have no alternative but to deny summary judgment on damages.[16]

An appropriate order has been entered.

### ORDER

This matter having come before the court upon motion of defendant Greate Bay Hotel and Casino for reconsideration of the opinion and order of this court dated March 25, 1992, and the court having considered the submissions, and for good cause shown;

It is, this 1st day of September, 1992, hereby ORDERED that defendant's motion for reconsideration is GRANTED.

It is further ORDERED that the March 25, 1992 opinion and order which granted summary judgment on liability in favor of plaintiff and denied summary judgment on damages be VACATED.

It is further ORDERED that, upon reconsidering the opinion of March 25, 1992, plaintiff's motion for summary judgment on liability is DENIED.

It is further ORDERED that defendant's motion for summary judgment on damages is DENIED.

---

16. Resorts has argued that affidavits submitted by the Sands on the damages summary judgment motion contradict the Sands' own testimony offered at the preliminary injunction stage; and that therefore the Sands is judicially estopped from relying on such proofs now, requiring summary judgment on damages to be granted instead to Resorts. Inasmuch as we have noted that our preliminary injunction proceedings did not treat with damages, we reject that argument.