

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2003

# Buffa v. NJ State Dept

Precedential or Non-Precedential: Non-Precedential

Docket 01-4094

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Buffa v. NJ State Dept" (2003). *2003 Decisions.* Paper 881.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/881

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No:  01-4094

———————

LORI A. BUFFA,
                    Appellant
v.

NEW JERSEY STATE DEPARTMENT OF JUDICIARY;
NEW JERSEY DEPARTMENT OF PROBATION;
JOHN AND JANE DOE; ENTITIES/CORPORATION (1-100);
JOHN AND JANE DOES, 1-100

———————

On Appeal from the United States District Court
for the District of New Jersey
District Court Judge:  The Honorable Dennis M. Cavanaugh
(D.C. Civ. No. 97-cv-06327)

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
December 10, 2002

Before:  FUENTES, GARTH and WALLACH*, <u>Circuit Judges</u>

(Opinion Filed:  January 14, 2003)

———————

OPINION OF THE COURT

———————

————————————

        *Honorable Evan J. Wallach, United States Court of International Trade, sitting by
designation.

<u>FUENTES</u>, Circuit Judge

The United States District Court for the District of New Jersey held that Lori Buffa ("Buffa") failed to show a genuine issue of material fact as to her claims for harassment, hostile work environment and retaliation under the New Jersey Law Against Discrimination ("NJLAD"), and thus granted summary judgment to the New Jersey State Department of the Judiciary and the New Jersey Department of Probation ("State Defendants"). Because we agree that no reasonable jury could find for Buffa based on the facts of this case, we affirm the Order of the District Court.

## I. Facts and Procedural History

Because we write solely for the parties, our review of the factual background is limited to that which is necessary to inform our opinion today. Since October 9, 1990, Buffa has worked for the entity now known as the New Jersey Department of Probation, as an investigator in the Child Support Unit. In late 1991, Buffa was diagnosed with Lyme Disease and, in 1992, she was diagnosed with Chronic Fatigue Syndrome.

In February 1996, Hazel Hoyle became the Assistant Chief Probation Officer in Monmouth County. Robert Hopkins became Chief Probation Officer around the same time. All supervisors reported to the Assistant Chief, who was responsible for overseeing staff, managing cases and making recommendations for discipline. Jan Budnik was Buffa's supervisor during the relevant time period. Buffa worked at the Probation Department for approximately thirty to 40 days over the six-month period when Hazel Hoyle worked there.

2

In her complaint, Buffa alleges that she was discriminated against by the State Defendants based on the fact that she has Chronic Fatigue Syndrome and based on a perception that she had AIDS, a handicap under the NJLAD. Buffa worked from 8:00 am to 4:00 pm, rather than the normal 8:30 am to 4:30 pm working hours of an investigator, due to her Chronic Fatigue Syndrome. She claims to have informed Hoyle about this arrangement, but Hoyle recalls that Buffa told her the schedule was set up because Buffa was a single mother. In 1993 Buffa learned that her ex-husband's child had been diagnosed with AIDS. Hoyle claims that she did not learn of any illness in Buffa's family until September 1996, when Buffa requested sick leave, but Buffa claims to have told Hoyle about her family's problems several days after Hoyle started work in the Probation Department.

Buffa alleges that Hoyle and other supervisors began a pattern of discrimination against her after learning of her health problems and her step-daughter's illness. Buffa alleges that, due to her health problems, she was the only investigator sent to receive a complete Hepatitis B vaccine. Buffa's request for a "voluntary furlough," dated April 10, 1995, was not denied until fifty-seven days later, while a co-worker with a similar request received an answer the same day that the request was made. On May 1, 1996, Buffa's fourth day back from medically documented sick leave, Hoyle reprimanded Buffa in a hostile manner because her denim dress failed to comply with the dress code. In the past, other employees wore denim dresses without being reprimanded.

As a result of the dress incident, Buffa became physically ill and left work, but

before leaving, she informed her immediate supervisor and Hopkins' administrative assistant. Dr. Lauren Goldstein, Buffa's physician, recommended that Buffa take disability leave from work and, on May 7, 1996, the doctor wrote Buffa a note advising the State Defendants that Buffa would be on medical leave from work for four weeks. While on disability leave, Buffa received a letter, dated May 29, 1996, from Hoyle informing her that disciplinary action was being taken against her because: (1) on May 1, 1996, Buffa left work before 11:30 am without supervisory authority; and (2) on May 2, 1996, Buffa failed to inform a supervisor of her absence within the time designated by the applicable collective bargaining agreement.

Buffa returned to work on August 12, 1996, and submitted a doctor's note requesting that she be allowed to take a one-half hour lunch in order to shorten her work day on account of her health needs and her children's health needs. Hoyle delayed a decision on this request, and after Buffa asked for an expeditious decision, Hoyle called Buffa to a meeting so that Buffa could explain the reasons for the request. The line of questioning pursued by Hoyle brought Buffa to tears. Subsequently, on September 6, 1996, a hearing was held regarding the disciplinary action described in the May 29, 1996 letter from Hoyle to Buffa. Buffa described the meeting as hostile; however, in the end, the charges against Buffa were dismissed and she was granted her request of a modified work schedule.

On or about September 11, 1996, Buffa gave a note to Budnik, written by a pediatric resident at Robert Wood Johnson University Hospital, stating that Buffa was needed at the hospital to care for her ex-husband's daughter. Buffa requested two and one half sick days,

4

but her request was denied.

On or about September 27, 1996, Buffa claims that she was accused of throwing a file at another employee. Upon Budnik's request, Buffa went to Millie Williams, Supervisor of the Typing Unit, with a request to have filing done. After Buffa went to see Williams about the request, Hoyle came to Buffa's unit and stated that "Millie said you went to her office and threw a memo at her desk." Buffa alleges that Hoyle requested one of Buffa's supervisors to prepare a memorandum regarding the incident. She claims that she felt harassed and upset by Hoyle's questioning concerning the incident.

On September 30, 1996, due to what Buffa alleges became a stressful and hostile work environment, Buffa submitted a resignation letter to Judge Lawson, the Assignment Judge who oversees the Probation Department. Campagnola informed Buffa that Campagnola told both Hoyle and Budnik about Buffa's resignation on that day. However, Hoyle continued to write letters to Buffa questioning her whereabouts and her failure to report to work.

On December 29, 1997, Buffa filed a five-count complaint against the State Defendants alleging violations of the American with Disabilities Act ("ADA") (Counts One, Two, and Four) and the New Jersey Law Against Discrimination ("NJLAD") (Counts Three and Five). On March 20, 2001, Buffa filed a stipulation of dismissal with prejudice as to Counts One, Two and Four. As a result of the voluntary dismissal, only Counts Three and Five, under the NJLAD, remained before the District Court. On April 3, 2001, the Court denied the State Defendants' motion for summary judgment and the claims filed under the

5

NJLAD remained. The State Defendants then filed a motion for reconsideration. On the motion for reconsideration, by order dated October 9, 2001, the Court granted the State Defendants summary judgment and dismissed the complaint.[1] This appeal followed.

## II. Jurisdiction and Standard of Review

We exercise jurisdiction under 28 U.S.C. § 1291 over a final decision of a district court. We exercise plenary review over a district court's grant of summary judgment and review the facts in the light most favorable to the party against whom summary judgment was entered. See Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III. Discussion

A.      **Motion for Reconsideration**

---

[1]      Once a summary judgment order has been entered there is no longer any basis for dismissing the complaint on which the summary judgment was based. See e.g., Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999) (instructing district court judges that they cannot enter summary judgment and then dismiss a complaint).

Buffa first claims that the District Court erred in granting Defendants' motion for reconsideration.. Under Federal Rule of Civil Procedure 59(e) and New Jersey Local Rule of Civil Procedure 7.1(g), a motion for reconsideration may be granted if: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. See North River Insurance Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). Local Rule 7.1(g) does not permit a Court to rethink its previous decision, rather, the rule permits a reconsideration only when "dispositive factual matters or controlling decisions of law" were presented to the court but were overlooked. See Resorts Int'l v. Great Bay Hotel and Casino, 830 F. Supp. 826, 831 (D.N.J. 1992).

In its opinion, the District Court set forth the appropriate standard for a motion for reconsideration and then recognized that it had overlooked certain arguments, factual admissions, and relevant caselaw previously set forth by the State Defendants. For instance, the district Court overlooked the fact that the Defendants did not dispute that Buffa had a "disability" under the NJLAD, which the District Court had previously held was a material issue of disputed fact. Also, the District Court had overlooked the Defendants' argument that the conduct of which Buffa complained did not amount to the requisite "severe or pervasive" discrimination necessary to sustain a harassment claim under Walton v. Mental Health Assoc. of Southeastern Pennsylvania, 168 F.3d 661 (3d Cir. 1999, discussed *infra*. Noting that some of these admissions and cited cases could impact its analysis of the State Defendants' motion for summary judgment, the District Court

7

concluded that the motion for reconsideration should be granted. Given the District Court's well reasoned analysis, we do not find that it erred in granting the motion for reconsideration .

**B.      Harassment/Hostile Work Environment**

Buffa next claims that the District Court erred in finding that she had not presented a triable issue as to her claim of hostile work environment. In Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, the New Jersey Supreme Court ruled that to prove a hostile work environment in the context of a sexual harassment claim under the NJLAD, a plaintiff must show "conduct that occurred because of her sex and that a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile or offensive working environment." Id. at 603. In Taylor v. Metzger, 152 N.J. 490 (1998), the Court held that this same standard also applies to other types of hostile work environment discrimination claims. Id. at 498. The courts of New Jersey rely upon federal court decisions under Title VII in reviewing hostile work environment discrimination claims. Id. at 499-50. Thus, as the District Court properly recognized, Buffa must demonstrate that the discrimination she alleges "would not have occurred but for her [disability]" and that the harassment she suffered was sufficiently "severe or pervasive" to make a "reasonable person" believe that the workplace conditions became "hostile and abusive." Lehman, 132 N.J. at 603-04.

This Court has previously ruled that evidence demonstrating a poor relationship

8

between an employer and an employee is not, by itself, sufficient to sustain a hostile work environment claim. See Walton v. Mental Health Association of Southeastern Pennsylvania, 168 F.3d 661, 667 (3d Cir. 1999). While Walton involved a claim of harassment brought under the ADA, the reasoning of the decision applies to the case before us. Buffa alleges that Hoyle harassed her and subjected her to a hostile work environment due to her Chronic Fatigue Syndrome and because Hoyle perceived her as having AIDS. To support these allegations, Buffa points to the fact that Hoyle asked her harassing questions about her need to work a modified schedule and take time off, Hoyle targeted her for reprimand for wearing a denim dress to work, and Hoyle subjected her to a hostile disciplinary proceeding regarding what Hoyle believed to be an unexcused absence from work. Like the plaintiff in Walton, Buffa has set forth evidence demonstrating that her relationship with her superior, Hoyle, was poor; however, Buffa has failed to assert facts that would allow a reasonable jury to find that Hoyle harassed her because of her disability. In addition, while Hoyle's actions may have upset Buffa, those actions, even considered together, do not constitute severe or pervasive conduct that would lead a reasonable person to conclude that the Buffa's work environment was hostile or abusive. We conclude that the District Court correctly granted summary judgment to the State Defendants on Buffa's hostile work environment claim.

## C.   Retaliation

To establish a prima facie case of retaliation of retaliation under NJLAD, a plaintiff must demonstrate by a preponderance of the evidence that: (1) she engaged in

9

protected conduct; (2) she was subjected to an adverse employment action subsequent to such activity; and (3) a "causal link" exists between the protected activity and the adverse action. See Delli Santi v. CNA Insurance Companies, 88 F.3d 192, 198 (3d Cir. 1996). The record reflects that Buffa contacted Joe Barba, the EEOC Officer for the Department of Probation in Monmouth County, and Cyril Cousins, an ADA Compliance Officer, about her treatment at work. Viewing the evidence in the light most favorable to Buffa, she engaged in protected conduct by contacting these individuals to complain about her work situation.

However, Buffa has failed to demonstrate that she was subjected to an adverse employment action as a result of her protected conduct. Because Buffa was not terminated, her argument focuses on the fact that she was subjected to harassment, intense scrutiny and overly-critical supervision as a result of having filed grievances. As analyzed above, these actions by the State Defendants did not result in a hostile work environment. Nor do these actions qualify as adverse employment actions. While an employee could potentially suffer an adverse employment action without officially being terminated, Buffa has failed to set forth evidence indicating that such a situation occurred in this case. Hoyle questioned Buffa about her need to take time off from work and work a modified schedule, criticized Buffa's work attire on one occasion, and issued a proposed written warning to Buffa for allegedly unexcused absences, which was later overturned on appeal. Buffa was never threatened with termination, demoted, urged to resign, or asked to assume lesser job responsibilities. In fact, the evidence indicates that the State Defendants changed Buffa's

10

scheduled working hours to accommodate her needs. At most, Buffa has set forth facts

demonstrating that she had a poor working relationship with her superior. The District

Court did not err in granting summary judgment to the State Defendants on Buffa's claim of

retaliation.

**D.      Punitive Damages**

Punitive damages should only be awarded if the defendant's conduct is wanton,

reckless, malicious or evil-minded. See Delli Santi v. CNA Insurance Co., 88 F.3d 192,

207 (3d Cir. 1996). Because Buffa's claims failed to survive a motion for summary

judgment, the District Court correctly held that Buffa cannot meet the higher threshold

required to justify a punitive damage award.

**IV.  Conclusion**

Accordingly, for the reasons stated above, we affirm the judgment of the District

Court.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

                                                  /s/ Julio M. Fuentes
                                                                 Circuit Judge